IN RE CASTNER, WILLIAMS, ASKLAND DRAINAGE DISTRICT No. 4, B. H. GISH, Appellant, v. HAMILTON COUNTY ET AL., and AMANDA GISH, Appellant, v. HAMILTON COUNTY ET AL.

Drainage: INCREASE OF ASSESSMENTS. The power given a board of supervisors to increase the assessments for drainage purposes does not authorize them to act arbitrarily in the matter; and where the power has been exercised as to a portion of the land owners only, without apparent necessity for increased funds, and corresponding reduction in the assessment of other landowners is not made, the court will set aside the increased assessment.

**Same:** APPORTIONMENT OF BENEFITS. Mere distance of lands from the outlet of a drainage ditch, except as to those which may be drained otherwise than through the ditch, is immaterial and not to be considered in estimating the benefits.

**Same:** EVIDENCE. Evidence held insufficient to justify the commissioners in raising the assessment of a portion of the land owners in the drainage district in question.

*Appeal from Hamilton District Court.*—HON. ROBERT M. WRIGHT, Judge.

TUESDAY, MARCH 9, 1909.

REHEARING DENIED, THURSDAY, JUNE 3, 1909.

THROUGH appropriate proceedings a drainage district was established, the improvement contracted, and the commissioners to classify lands and apportion the cost of construction, fees and damages made their report.  On June 14, 1906, the board of supervisors took up this report and raised the assessment, as reported by the commissioners as follows:

| Name | Description | Section | Township | Range | From | To |
|---|---|---|---|---|---|---|
| B. H. Gish | NW SE | 19 | 89 | 23 | $332 00 | $381 80 |
| " | SW SE | 19 | 89 | 23 | 370 51 | 426 08 |
| " | NW NE | 30 | 89 | 23 | 321 38 | 369 57 |
| " | NW NE | 15 | 88 | 24 | 139 44 | 153 38 |
| " | NE NE | 15 | 88 | 24 | 47 81 | 52 59 |
| Amanda Gish | NW NE | 14 | 88 | 24 | 151 39 | 174 09 |
| " | NW SW | 14 | 88 | 24 | 42 50 | 46 75 |

Both B. H. and Amanda Gish appealed to the district court, by which the action of the Board of Supervisors was approved, and they have appealed to this court.—*Reversed.*

*Wesley Martin,* for appellants.

*J. M. Blake* and *D. C. Chase,* for appellees.

Ladd, J.—This is an appeal from the apportionment of the costs of construction, fees and damages, incident to the excavation of a drainage ditch, to the several tracts of land belonging to B. H. and Amanda Gish. Some question is made in appellants' brief concerning the manner of making the classification and the timeliness of the commissioners' report, but these matters are settled against their contention in *Farley Drainage Dist. No. 7 v. Hamilton County,* 140 Iowa, 339. Other questions presented are: (1) Whether the board of supervisors exceeded its power in increasing the assessments on some tracts of land without decrease of those on others in an equal amount; (2) whether they rightly estimated greater benefits to some tracts of land solely because more remote from the outlet; and (3) whether the evidence was such as to justify the action of the board of supervisors in raising the assessments of appellants. These propositions will be considered in the order mentioned.

I. At the time fixed for hearing no written objections were filed, but two of the three members of the board of supervisors, upon doubt as to the accuracy of the apportionment to nineteen different tracts being suggested in a general way by "some of the appraisers," proceeded to examine these and raised the assessments thereon about $600 in the aggregate without any corresponding reduction on other lands. One of the members testified that the effect of this increase in raising more money than was required was not taken into account; and to the inquiry, "What reason was there for getting the extra amount of money in this district?" answered, "No reason at all." The other member testified that the object of the increase was not because more money would be needed, but merely to equalize, and that it was not thought necessary to decrease other

1. Drainage: increase of assessments.

assessments accordingly, because none was assessed too high, and he believed that there would be a shortage "because of our experience in this drainage district." The drainage district had been established in September, 1905, and the supervisors had by resolution estimated the total expense incurred and to be incurred at $32,000 in March, 1906. The resolution increasing the assessments was passed on June 14th of that year, and the appeal therefrom was not heard in the district court until June 27, 1907. At that time the contract had been let and the work nearly done, so that, had there been any occasion for an increase in the fund to be raised by taxation, the evidence was available to defendants. None was adduced, and in so far as the record discloses the respective increases were in excess of the amount essential to the construction of the ditch and the payment of all expenses incident thereto. Were there any tenable reason suggested for this increase in the fund to be raised, it ought not to be questioned, for a large discretion is reposed in the board of supervisors in estimating the amount necessary to be raised by taxation; but, as in other cases, such discretion may be abused. The power given the board to increase assessments does not authorize it so to do arbitrarily, and thereby force from owners of lands benefited payments in excess of that necessary to meet the expenses of the improvement, and when this appears to have been done the court will not hesitate to remedy the abuse of power by an appropriate order.

II. In apportioning the expense incident to the construction of the ditch, the board of supervisors proceeded on the theory that the farther land was from the outlet of the ditch the greater were the benefits received, and took this into account in increasing the assessments on the several tracts. The alleged reason for so doing was that, in the absence of the ditch, the owner of a forty acres at a distance from

2. SAME: apportionment of benefits.

the outlet would be compelled to go farther for an outlet than owners of the tracts nearby. This might be so were every owner bound to run a drain from his land into the outlet of the ditch in order to get rid of the surface water, instead of into the nearest water course through which it may flow to such outlet or some other. "If, owing to its location, the construction of a ditch will not drain the land any more or differently than is done by the existing swale or swamp, or render it more accessible, or affect its immediate surroundings, then it is not benefited, even though the ditch may carry off the water. When lands are so situated there is imposed on those below a natural servitude to receive such waters as naturally flow therefrom. The reason for this is that the water naturally descends, so that in the course of nature it must flow from a higher to a lower level, and the owner is entitled to enjoy his property with such natural advantages as are derived from its situation, and is under no obligation to assist the owner of the servient estate to get rid of the water flowing on his land." *Zinser v. Board of Supervisors,* 137 Iowa, 660. The upper lands may be quite as accessible to a natural water way as those nearer the outlet, and the mere matter of distance from the latter is not at all controlling in ascertaining the necessity or benefit of an artificial water course. Indeed the ditch is ordinarily located along the line of the natural water course, and as the water increases in volume as it nears the outlet the lower owners would seem to labor under greater disadvantages than those having lands farther up, and therefore might be expected to derive greater benefits from the improvement confining and carrying away the water within well-defined banks. The design of the drainage law is to effect mutual co-operation of all those whose lands will be beneficially affected. None can well proceed separately. District drainage can only be accomplished efficiently and economically by resorting to a common enter-

prise, and the equitable measure of contribution recognized by our statute is that the burdens imposed shall be in proportion to the actual (not theoretical) benefits received therefrom. We are of opinion that the mere matter of distance from the outlet, save as to the land thereat which may be drained otherwise than through the ditch, is not of the slightest consequence in estimating benefits.

III.   Nor do we think the increase in the assessments of the several forty-acre tracts of appellants justified by the evidence. Necessarily the respective amounts to be exacted are to be fixed on comparison with other lands in the district. Five witnesses testified that the S. E. ¼ S. E. ¼ of section 19 received greater benefit than the S. W. ¼ of the same quarter, and yet the board raised the latter from $370.51 to $426.08 and allowed the former to remain at $398.07. One of plaintiffs' witnesses approved the increase of the N. W. ¼ N. E. ¼ of section 30, while several other witnesses testified to the accuracy of the commissioners' report on this and other forties from an intimate knowledge of appellants' lands and those surrounding them. On the other hand, one of the witnesses called for defendants based his testimony solely · on the assumption that the figures stated in the interrogatories were those of the commissioners, and for that reason right, and at the same time admitted that he was not on speaking terms with B. H. Gish. Another witness, after saying that two assessments made by the board were right, admitted that there was no ground for assessing one of them at $27.48 higher than a neighbor's forty acres, and that the commissioners' estimates were correct. Another witness gave his opinion without details, and still another admitted on cross-examination that one forty acres was assessed $21.80 to $27.80 too high by the board, and another forty, which was assessed at $58.50 more than an adjoining forty, should have been placed at the same figure. Two members of

3. SAME: evidence.

the board of supervisors only examined the land, and, of course, both testified to the equitable character of the appraisals made by them; but as seen, the increase in the assessments was made by them without any corresponding diminution of other assessments, and this without reason for increasing the fund to be raised. Gish had claimed damages because of the excavation of the ditch through his land, and one member, Sparboe, had threatened that his assessments would be raised so as to equal what he should recover, and afterwards explained that he was in favor of doing so, but that the other member of the board kept him down. Sparboe did not deny these statements, but thought them before the increase in the assessments. The clear preponderance of the evidence was otherwise. He admitted hostility to Gish, and his testimony clearly indicated that he had treated the adjustment of the claim for damages in the manner contemplated by law largely as a personal matter. In these circumstances little, if any, weight should be accorded the presumption, ordinarily indulged in favor of official action, that the assessment was properly raised, especially as the board was able to discover in the great number of tracts in the drainage district seven of the nineteen on which assessments were raised belonging to the parties who had made a successful claim for damages. We are of opinion that appellants have shown by a fair preponderance of the evidence that the assessments as fixed by the commissioners ought not to have been increased.—*Reversed.*