In the Matter of the Appeal of SARAH JENISON from. the action of the Board of Supervisors in the apportionment of benefits in Drainage District No. 14, in Greene County, Iowa.

**Drainage:** OBJECTION TO APPRAISEMENT: APPEAL.  Objection to the method pursued by appraisers in determining the relative cost of a drain to be assessed each tract, not made before the board, can not be urged on appeal.

**Same:** APPORTIONMENT OF EXPENSE.  Where there is a natural water course the owners of land near the outlet must take care of the water coming from the land above; so that ordinarily where a drainage ditch will take care of the water from the upper land, providing for the natural flow, nothing should be added to their share of the cost of constructing the drainage system because situated at a distance from the outlet.

**Same:** APPORTIONMENT OF EXPENSE: EXCESSIVE ASSESSMENTS.  It is the design of the drainage law to effect efficient drainage by cooperation of all landowners within the district, the cost to be apportioned against the several tracts according to the actual benefits.  This rule requires the natural advantages to be taken into account and that lands having but little need of artificial drainage shall not bear a heavier proportionate burden than those through which the waters accumulating from natural drainage flow, and. for which the owners of the lower land must provide.  Evidence held to show that assessments against lands lying remote from the outlet were excessive.

**Assessments:** APPEAL.  The filing of a notice of appeal from an assessment of the cost for drainage purposes with the county auditor, and a bond,. as required by statute, operates to transfer the cause to the district court, and appeal from the judgment of the district court may then be taken in the usual way by service of notice on counsel.

*Appeal from Greene District Court.*—HON. F. M. POWERS, Judge.

MONDAY, DECEMBER 20, 1909.

DRAINAGE district No. 14 was duly established in Greene County, and the appraisers reported fixing the assessment against the northeast quarter of the northeast quarter of section 34 in township 83 N., of range 31, at $107.75, and against the southeast quarter of the same northeast quarter at $301.75. To this, Sarah Jenison, the life tenant, filed objections, and, upon hearing, the board of supervisors levied the amount as reported on the north forty acres, and reduced that on the south forty acres to $247.37. She appealed to the district court, which, on hearing, confirmed the assessments as made by the supervisors, and she has appealed to this court.—*Modified* and *remanded.*

*J. A. Henderson* and *Wilson & Albert,* for appellant.

*B. O. Clark* and *Gallaher & Graham,* for appellees.

LADD, J.—The drainage district includes forty-two tracts of forty acres each, and the report of the engineer adopted by the board of supervisors, recommended the laying of tile throughout; the main tile to begin at the center of the northwest quarter of section 1, in township 82 N., of range 31, extend along a natural channel in a westerly direction to the west side of the road between sections 2 and 3, and thence south along the west side of the highway to a point fifteen rods south of the quarter section corner, and thence diagonally across the road into Greenbriar Creek, the end to be protected with a concrete wall, apron, and bulk head. The specifications called for twenty-two-inch tile in the last six thousand two hundred and sixteen feet; sixteen-inch tile in the next nine hundred

feet; fifteen-inch tile in the next one thousand five hundred and forty-four feet; fourteen-inch tile in the next six hundred feet; twelve-inch tile in the next two thousand four hundred feet; and ten-inch tile in the next eight hundred feet. From the main tile Branch A was to extend to the center line of section 34, in township 83 N., of range 31, in a natural draw, with fifteen-inch tile in three thousand two hundred feet; fourteen-inch tile in one thousand five hundred feet; twelve-inch tile in one thousand feet; ten-inch tile in one thousand feet; eight-inch tile in one thousand feet. From this branch another was to extend to a point on the east line of the east half of the northwest quarter of said section 34 about one hundred feet south of the center of said line, half with ten-inch tile and the other half with eight-inch tile. The last-described land is that on which the assessments are alleged to have been excessive. Four other branches were recommended; three of which to extend into section 35, and the other into section 36, in said township 83, in which the tile was to be six, seven and eight inches in diameter. The lands included in the district and assessed are the southeast quarter of the southeast quarter of section 27, the east half and the east half of the west half of section 34, the south half, the south half of the northwest quarter, and the southwest quarter of the northeast quarter of section 35, and the southwest quarter of the southwest quarter of section 36, in township 83 N., of range 31, and the north half of the northeast quarter, southeast quarter of the northeast quarter, and northeast quarter of the southeast quarter of section 3, the north half and the northwest quarter of the southwest quarter of section 2, and the northwest quarter of section 1, in township 82 north, of range 31. The estimated cost of the improvement was $8,300, or $7.28 per acre on the one thousand one hundred and forty acres which it was thought would be benefited.

Nothing in the record, aside from the size of the tile recommended and the situation of the water courses, in-

dicates the character of the lands other than those immediately adjoining the premises of plaintiff, so that any inquiry as to whether the costs and expenses of the improvement was justly and equitably apportioned against the several tracts according to the benefits to accrue is impossible.

Nor can plaintiff be heard to complain of the method pursued by the appraisers in determining the relative portion of the costs and expenses to be assessed against each

1. DRAINAGE: objection to appraisement: appeal.

tract, for no such objection was interposed at the hearing before the board of supervisors. Section 1989a12, Code Supp., requires all objections to be made in writing and filed with the county auditor on or before noon of the day set for hearing by the board of supervisors, and on appeal others may not be urged.

The plaintiff did object, however, to the assessments on the ground that these exceeded the benefits which would result to the respective tracts of land, and this issue was fairly presented by the evidence. It will be noted that none of the tile was to be laid on plaintiff's land, and no claim is made that the eight-inch branch, extending to a point one hundred feet below the center of the east line, alone will drain any portion of it. The benefit, if any, to be derived therefrom, lies in its future use as an outlet through which to drain the premises. The assessment against the north forty acres was $107.75, and against the south forty acres was $247.37, or $355.12 in all. Five of the witnesses called by plaintiff estimated the benefits to accrue from the improvement at $100 or less and another at $150. One of the witnesses for the defendant, who also was one of the appraisers, estimated the benefits to the land from the outlet at from $100 to $150, and explained that in fixing the assessments the appraisers proceeded on the theory that plaintiff might drain the south nineteen acres of the south quarter southeasterly through a drain

to be constructed by her in the lands of Mears and Henderson to connect with the tile drain some fifty to seventy-five rods away. No provision therefor appears in the specifications, and for all that appears this outlet would not be available save by condemnation of a right of way under the recent amendment to the Constitution. All these witnesses had been familiar with the lands for many years. Another appraiser testified that he could not state the value in dollars and cents, but thought that if it was his land the improvement would add $5 per acre to it.

The appraiser, who was a civil engineer, testified that no other outlet save the tile at the east side was considered, though it was taken into account that the south nineteen acres did not naturally drain in that direction. This witness thought the outlet, if there were no other possible, added $500 to the value of the land, and one of the petitioners for the improvement was of the same opinion. The latter seemed to be impressed with the thought that plaintiff should care for the surface water gathering on her land instead of allowing the lower estates to bear the servitude nature had imposed on it, while the former appeared inclined to magnify the importance of the distance of the land from the outlet of the system, even though the tile were laid in natural water courses. Where there is a natural water course, the owners of the lands nearer the outlet must care for the water coming from above in any event, and, insofar as the ditch or tile to be constructed does this and provides for the natural flow, there is no ground for adding anything to the share of the expense assessed against the lands because of the distance therefrom alone. *Gish v. Hamilton County*, 142 Iowa, 716. Indeed, the cost of taking care of the natural volume of water ordinarily decreases as the improvement recedes from the outlet; so there is a stronger argument for assessing the lands higher in proportion the nearer they are in the course or stream to the

2. SAME: apportionment of expense.

outlet. Of course, for the water collected in the drainage system which, but for it, would not reach the natural water course, there is some ground for taking into account the distance from the outlet in connection with the relative amounts of water collected from each tract, but it is exceedingly doubtful whether, in the improvement of a water course, this ordinarily would exceed in value the advantage to be derived by the owners of lower lands in the care of the larger amount of water ordinarily accumulated as the outlet is approached.

No general rule can be laid down, save that, as the design is to effect efficient drainage by mutual co-operation of the owners of all lands in the district, the cost and expense of the improvement should be apportioned against the several tracts included therein according to the benefits, actually (not theoretically) to be derived therefrom. This will require the natural advantages to be taken into account, and obviate the anomalous conclusion that land on the border of the watershed, having slight need of artificial drainage, shall bear a heavier burden proportionately than that through which the waters accumulating from natural drainage of the upper lands flows, and for which the owners of servient estates must provide.

3. SAME: apportionment of expense: excessive assessments.

From what has been said, it is manifest that the decided weight of the evidence is to the effect that the assessments were largely in excess of the benefits, and this conclusion is confirmed by the proof concerning the character of the land. The north forty, except where occupied by the buildings, had been cultivated since 1875. The ridge forming the rim of the watershed, constituting the drainage district, is near the west side, and considerable land drains to the west and north. The top of the ridge is about twenty-five feet above the point on the east line touched by the tile drain, the land gradually sloping therefrom to the southeast and east far beyond the east line.

The fall of the land to the east of that line is a foot for every ten rods for eighty rods. The engineer who made the preliminary survey testified that "so far as the surface water of the north forty is concerned, there was no necessity for artificial drainage," but several, witnesses were of opinion that tiling would enhance somewhat the value of seven or eight acres for crop purposes, though no water stood on it or ever had. About nineteen acres of the south forty acres drain to the south and southeast. The land is high at the southwest corner, with two little depressions or ponds in it, and from about one-third the way across it slopes to the south and southeast, the drainage being in a southeasterly direction through the southwest quarter and the south half of the southeast quarter of section 35. To reach the tile outlet in draining about nineteen acres would require a cut of seven feet, and the engineer who made the preliminary survey was of opinion that it would be impractical to draw the surface water from the southeast corner over to the proposed outlet. The remaining or north twenty-one acres appear to slope to the east and to drain toward the outlet. Near the outlet is a pond of about one-third acre, and this is surrounded by about five acres of hay land, from which there is a depression or swale extending toward the west where the slope becomes more abrupt. The evidence warrants the conclusion that there are six or eight acres in the north part of the south forty, and possibly several more, which would be enhanced in value above the cost of laying the tile therein to connect with the outlet. The record has satisfied us that the assessments considerably exceed the benefits to be conferred, to say nothing of the probable excess due to the peculiar method which appears to have been adopted in apportioning the costs and expenses to the several tracts by additions because of distance from the outlet, amounting to about one-third of the assessment against plaintiff's land. In harmony with the clear preponderance of the evidence, the

assessment against the north forty acres will be reduced to $50, and the south forty acres will be reduced to $100. The cause will be remanded -for decree in harmony with this conclusion.

The motion to dismiss the appeal is overruled. Section 1989a6 authorizes an appeal to be taken from the findings of the board of supervisors, by filing notice there-

4. ASSESSMENTS: appeal.
of with the county auditor at any time within ten days after they are made and a bond with conditions specified, and this is the method prescribed for appeals from the levy of assessments. Section 1989a14, Code Supp. Such a notice and bond were filed, and this was effective in transferring the cause to the ·district .court, from which appeal was taken in the usual way by serving notice on counsel representing the interests of the drainage district in the district court.—*Modified* and *remanded*.