CORA L. LYON, Appellant, v. THE BOARD OF SUPERVISORS
OF SAC COUNTY, IOWA, and DRAINAGE DISTRICT No. 33.

**Drainage:** ESTABLISHMENT OF DISTRICT: STATUTES. The statutes pro-
1   vide three methods by which districts may be established for
the drainage of land subject to overflow or too wet for cultiva-
tion, either of which may be pursued.

**Same:** DETERMINATION OF CHARACTER OF LAND: SUFFICIENCY OF PRO-
2   CEEDING. In the establishment of a drainage district under sec-
tions 1989-a5, a6 of the Code Supplement, the proceeding is not
invalidated because the resolution of necessity for the improve-
ment was stated in the past rather than future tense: Nor be-
cause there was no specific finding that the land was subject to
overflow or too wet for cultivation; it being sufficient for the
board to determine that the petition was sufficient in form and
substance, that the improvement is necessary and would be con-
ducive to the public health, convenience and welfare, or to the
public benefit and utility; as such a finding involves a determina-
tion that the land is subject to overflow.

**Same:** OBJECTIONS TO ESTABLISHMENT OF DISTRICT: WAIVER. Where
3   specific objections to the establishment of a drainage district
are interposed before the board of supervisors all other objec-
tions will be deemed waived on appeal.

**Same:** REPORT OF ENGINEER: ELEVATIONS. Under the present statute
4   the engineer need not show in his preliminary report the levels
and elevation of each tract within a drainage district, or how
the same will be affected by the improvement.

**Same:** DESCRIPTION. In the absence of any showing to the contrary
5   it will be presumed that the plat and profile filed by the engineer
discloses lakes, ponds and deep depressions within the district and
the elevations thereof. And a specification of all the forty acre
tracts included in the district is a sufficient description of its
boundary.

**Same:** SURVEY AND REPORT: IRREGULARITIES: JURISDICTION. Irregu-
6   larities in the method pursued by the engineer in making his
survey and report which are not objected to before the board
of supervisors will not be reviewed on appeal unless of a char-
acter which will deprive the board of jurisdiction to order the

improvement. And while the law contemplates that the report shall be based upon the best judgment of a competent engineer after actual examination and study of the proposed district, in connection with such measurements as may be necessary to an exact knowledge of the topography of the territory to be drained, it is not necessary that the engineer personally attend to every detail of the work; and even though the field work is left largely to assistants and the engineer's report is based largely upon their information, still if it contains the data required by statute the board is authorized in acting thereon in the absence of fraud, and is not deprived of jurisdiction because of such irregularity.

**Same:** REPORT OF APPRAISERS: SUFFICIENCY. Even though the profile of the engineer did not disclose the elevation of each forty acre tract above the main tile, still where one of the appraisers was a competent engineer and for all that appeared additional levels might have been taken, the report of the appraisers was supported by sufficient data.

**Same:** APPORTIONMENT OF COSTS: REVIEW. Where no objection to the apportionment of costs was made before the commissioners, the same can not be urged on appeal.

**Same:** ASSESSMENT: REVIEW. An objection to an increase of an assessment as recommended by the commissioners can be made on appeal, although the same was not presented to the supervisors.

**Same:** ASSESSMENTS: ADDITIONAL BENEFITS. Although land may have been previously drained, still if such drainage was insufficient and the proposed improvement will prove a benefit by affording a sufficient outlet, this fact will support an assessment of the land to some extent for the new improvement.

**Same:** ESTIMATE OF BENEFITS. The right of a landowner to conduct surface water into a natural channel extending upon adjoining land must be considered in estimating the benefits to be derived from the establishment of a drainage improvement.

*Appeal from Sac District Court.*—HON. F. M. POWERS and Z. A. CHURCH, Judges.

WEDNESDAY MAY 15, 1912.

ON the petition of Albert and Frederick Winkler, and over the objections of Cora L. Lyons and others, a drainage district was established by the board of super-

visors. Also commissioners assessed the costs of the improvement against the several tracts of land benefitted; and to the report filed by them Mrs. Lyons and others interposed objections, which were overruled, and the portion of costs assessed against her land increased. She appeals from both orders—that establishing the drainage district and that levying the assessment of costs against her land. *Affirmed* as to first appeal; *modified* and *affirmed* as to second.

W. H. *Hart* and *Chas. D. Goldsmith* for appellant.

R. L. *McCord* for appellee.

LADD, J.—All or portions of twenty-six forty acre tracts were included in the drainage district, making nine hundred and four acres in all. Three acres of this were

1. DRAINAGE: establishment of district: statutes.

eliminated by the commission appointed to apportion the costs among the several tracts. The petition praying for the improvement contained the allegations necessary under sections 1989-a1 and 1989-a2 of the Code Supplement, described the several tracts of land proposed for the drainage district, and was accompanied by a bond, duly approved. The petition alleged the body or district of land, described in forty acre tracts therein, to be "subject to overflow or too wet for cultivation," in the language of the statute, and was signed by Albert and Frederick Winkler only. It is contended that, inasmuch as the procedure was under chapter 2, title 10, the sentence quoted should be construed as meaning, not merely that the land contains wet or marshy spots here and there, small ponds, or limited areas of low lands, which fill in times of continuous rains with water, or, because of becoming wet, occasionally cause temporary trouble in cultivation, but that "the entire territory included is in such condition of wetness from

overflow or otherwise as to be unfit for agricultural purposes." This contention is on the theory that provision for the drainage of the character of land, such as is said should be excluded, is found in section 1940 of the Code, exacting the signatures to the petition of a majority of the persons resident of the county owning land abutting on the improvement, or section 1952, requiring the signatures thereto of one hundred voters of the county. But, under section 1940, only those through whose land or whose land abuts the improvement participate in initiating the improvement, and the kind of land to be included is not described, the board of supervisors being required to find only that the improvement will be "conducive to the public health, convenience and welfare;" and the district is defined by the commissioners appointed to apportion the cost "to the owners of the land along or in the vicinity of such improvement and to be benefited thereby"—such land being classified for this purpose as "dry," "low," "wet," or "swamp." The petition, under section 1952, allowing proceedings to be initiated by the filing of a petition, signed by one hundred voters of the county, none of whom need reside in the district, must describe the body or district of land by metes and bounds, or otherwise, and allege that it "is subject to overflow or too wet for cultivation." As the language is substantially the same in section 1989-a2, there is no ground for saying lands of different character are intended. Nor do we think there is anything in chapter 2-a, title 10, indicating the intention on the part of the legislature to restrict the kind of land to narrower limits than contemplated in section 1939 et seq. Indeed, the purport of the law enacted in 1904 is broader, and, though more specific, is also more comprehensive. The main difference is in the procedure, and this evidently to afford a method of initiating and executing a necessary improvement in the matter of drainage suitable to situations as they may develop.

Thus "one or more landowners whose lands will be affected by or assessed for the expenses of the proposed improvement" may present a petition therefor, when it might be impossible to procure the signature thereto of a hundred voters of the county, or even a majority of those through whose lands or abutting whose lands the proposed improvement would be made. On the other hand, the owners of land to be affected might decline to improve, and yet this be essential to the public health and convenience, in which event one hundred voters might insist thereon. Moreover, it is expressly enacted that the provision of chapter 2-a, title 10, Code Supplement, shall be construed as an independent procedure additional to chapter 2, title 10, of the Code. That relief, in event of submerged lands or those entirely unfit for use only, was not the design is put beyond cavil by that portion of section 1989-a1, Code Supplement, which declares that "the drainage of surface water from agricultural lands shall be considered a public benefit, and conducive to public' health, convenience, utility and welfare." See *Sisson v. Supervisors,* 128 Iowa, 442. As indicated, any of the three methods may be pursued in initiating the drainage of lands subject to overflow, or too wet for cultivation; and a careful examination of the record has led to the conclusion that the district court's action in declining to interfere with the action of the board of supervisors should be sustained. *Hoyt v. Brown,* 153 Iowa, 324; *Prichard v. Supervisors,* 150 Iowa, 565.

II. The board of supervisors found the improvement a necessity, and at a subsequent session resolved that the improvement, as proposed, was conducive to the public health, convenience, and welfare, and of public benefit and utility. This resolution is criticised, for that it was worded as in the past, instead of probable future, tense, and because it did not expressly find the land "subject to overflow or too wet for cultivation." The resolution is

2. SAME: determination of character of land: sufficiency of proceeding.

stated, rather than copied into the record, and in so doing the word "was" may have been used, instead of "would be," inadvertently. If this is not so, the meaning of the resolution as recited is evident. It was not concerning a completed ditch or tile drain, but of one proposed; and, even though referred to as suggested, reference to the improvement proposed is so manifest that any other inference would be absurd. No record of any finding as to the land being subject to overflow, or too wet for cultivation, is exacted by the statute; it being sufficient that the board determine that the petition is sufficient in form and substance; that the improvement is necessary, and will be conducive to the public health, convenience, and welfare, or to the public benefit or utility; and that it is advisable. Sections 1989-a5, 1989-a6, Code Supplement. Such finding, however, involved the determination that the land is subject to overflow, or too wet for cultivation; and the establishment of the district necessarily included a determination that the land therein is of a character essential to authorize improvement. *Oliver v. Monona County,* 117 Iowa, 43.

III. The engineer designated by the board of supervisors filed his report of the preliminary survey, reciting, among other things, that "a full and complete description of all lands which, in my opinion, will be affected by said improvement, together with the names of owners thereof as they appear in the transfer books of the auditor's office, which, together with the accompanying map and profile, which are made part of this report, show the elevations and the levels of the lands embraced in said watershed, so far as I deem necessary, and the dimensions, size, levels, depths, and location of these improvements, together with the probable cost of the improvements." He further reported that the land included was of a character contemplated by statute, and that the improvement would be

3. SAME: objections to establishment of district: waiver.

conducive to public health, etc., and recommended that it be made. This report was objected to, for that (1) it did not show in a particular or general way how each tract of land included would be affected by the proposed improvement; (2) it did not show the levels or elevations of the lands therein, and therefore supplied the board of supervisors with no data upon which it could act advisedly; (3) it did not indicate whether all lands included would be benefited by the improvement, merely expressing his opinion and omitting facts on which based; (4) the plat and profile did not show the levels and elevations of each tract, or how each would be affected by the improvement, nor the course of drains; and (5) only a part of the lands included will be beneficially affected by the improvement. Having interposed these objections before the board of supervisors, all others must be deemed to have been waived. Section 1989-a3 of Code Supplement exacts a time for hearing claims for damages and objections to the establishment of the proposed district and the contemplated improvement, and that notice thereof be given. The sections following provide for the filing of claims for damages, the adjudication thereof, and also the determination of whether the district shall be established, and an appeal to the district court from either order; and the latter issue is to be heard on the equity side of the calendar. There is no express requirement of statute that objections, oral or in writing, to the establishment of the drainage district be interposed before the board of supervisors, but only a "party aggrieved may appeal from the finding of the board in establishing or refusing to establish the improvement district," and a party can not well be said to have been aggrieved, save by an adverse ruling on an issue in some manner raised. Having specified the objections on which she will rely, others are deemed to have been waived thereby, and having been defeated on these, she can not be permitted to amend her hold by asserting other objec-

tions upon appeal in the district or in this court. *Prichard v. Supervisors*, 150 Iowa, 565. For this reason, several of the points made for the first time in appellant's petition filed in the district court, and argued here, must be disregarded.

Reverting to the objections urged before the board of supervisors, it is enough to say that three of these are disposed of by directing attention to the change in the statute since *Zinger v. Supervisors*, 137 Iowa, 665, was decided. Section 2 of chapter 68 of the Acts of the Thirtieth General Assembly, which was construed in the *Zinger* case, was amended by section 1 of chapter 94 of the Acts of the 32d General Assembly, so as to dispense with returning, in the preliminary report of the engineer, the levels or elevations of each tract, or how it would be affected by the improvement. See Code Supp. section 1989-a2.

*4. SAME: report of engineer: elevations.*

The record does not disclose whether there were any lakes, ponds, or deep depressions in the district, nor that, if there were, the elevations thereof were not indicated on the plat and profile. These are not before us, and, for all that appears, they may have fully complied with the law; at least, in the absence of any showing to the contrary, they will be so presumed.

*5. SAME: description.*

The boundary of the district was indicated with sufficient definiteness by specifying all the quarter sections included. *Lawrence v. Board*, 151 Iowa, 182.

No objection to the method pursued by the engineer was urged before the board of supervisors, and therefore is not before us for review, unless the defects therein were such as to deprive that body of jurisdiction to order the improvement. *Lightner v. Greene Co.*, 145 Iowa, 95. The engineer took no part in surveying the district, and did not examine the proposed district subsequent to his appointment.

*6. SAME: survey and report: irregularities: jurisdiction.*

The survey was made by an assistant, his brother, and he also prepared the plat and profile; and the engineer appointed made the report in reliance on these, with such information as his assistant gave and his recollection of the land from having previously surveyed a portion of it. The controlling importance of this report was pointed out in *Zinzer v. Board,* 137 Iowa, 660; *Hartshorn v. Wright Co.,* 142 Iowa, 72, and *In re Nishnabotna River Improvement District No.* 2, 145 Iowa, 130.

Of course, it is not necessary that the engineer attend to every detail of the work. Much must be done by assistants. *Prichard v. Board,* 150 Iowa, 565. But the law contemplates that the supervisors shall have the advantage of the best judgment of a competent engineer, and this can be given only upon a thorough, actual examination and study of the proposed district, in connection with such measurements as may be essential to exact knowledge of the typography of the territory to be drained. Unless an engineer is willing to do this and take personal charge of the necessary surveys, he should decline the appointment and permit another to be selected, willing to do everything essential to supply the most accurate information and insure the soundest judgment on the problem presented, even though not large. Too much is involved in the way of property and sacrifice in making the improvements of this kind to justify the acceptance of service any less efficient; and this much section 1989-a2 surely contemplates in exacting the appointment of "a disinterested and competent engineer," who "shall proceed to examine the lands described in said petition and any other lands which would be benefited by said improvement or necessary in carrying out said improvement and survey and locate such drain or drains, ditch or ditches, improvement or improvements as may be practicable or feasible to carry out the purposes of the petition. He shall make return

of his proceedings to the county auditor, which returns shall set forth the starting point, the route, the terminus or termini of the said ditch or ditches, drain or drains, or other improvements, together with a plat and profile showing the ditches, drains or other improvements, and the course and length of the drain or drains through each. tract of land and the elevation of all lakes, ponds and deep depressions in said district, and the boundary of the proposed district, and the description of each tract of land therein and the names of the owners thereof as shown by the trasfer books in the auditor's office, together with. the probable cost, and such other facts and recommendations as he may deem material." The manner in which the engineer discharged his duty, however, was an irregularity in the proceedings, and not a jurisdictional defect. His report, containing data exacted by statute, was before the board, and, notwithstanding irregularities in preparing it, these, in the absence of any charge of fraud, at least, did not deprive the board of supervisors of jurisdiction to order the improvement. *In re Drainage District No. 3, Hardin County*, 146 Iowa, 564. It follows that the objections interposed were rightly overruled, and lapse of the engineers not such as to interrupt the authority of the board of supervisors in establishing the district.

IV. The report of the appraisers seems to be in accord with the requirements of section 1989-a2, Code Supp., though classifying the land was superfluous. The elevation of each forty acres, or portion thereof, above the main tile may not have been disclosed in the original survey; but one of the appraisers was a competent engineer, as required by the above statute, and if the plat and profile, in connection with the inspection of the land, did not supply sufficient information, additional levels might have been, and, for all that appears, may have been, taken. The report of the commissioners rests on sufficient data.

7. SAME: report of appraisers: sufficiency.

V. The costs apportioned against the several forties of appellant by the commissioners were increased by the board, as follows, the first column indicating the amounts recommended by the commissioners, and the second the assessments levied:

8. Same: apportionment of costs: review.

| | | |
|---|---|---|
| N. W. ¼ N. W. ¼ Sec. 12 | $138 75 | $230 25 |
| N. E. ¼ N. W. ¼ " | 250 00 | 300 00 |
| S. W. ¼ N. W. ¼ " | 71 25 | 190 00 |
| S. E. ¼ N. W. ¼ " | 9 27 | 9 27 |

No objection was interposed to the report of the commissioners; and as to the apportionment of costs, recommended by them, none can be heard on appeal. *In re Jenison,* 145 Iowa, 215.

But objection to an increase of the assessment so recommended is not exacted; and section 1989-a14, before the amendment by section 6 of chapter 87 of the Thirty-Fourth General Assembly, authorized a review of the action of the board of supervisors in raising an assessment, as reported by the commissioners. It provided that "an appeal may be taken to the district court from the order of the board fixing the assessment of benefits upon the lands in the same manner as herein provided for the assessment of damages." The increase is included in the assessment; and, as no objection thereto must have been raised before the board, this statute necessarily authorizes its consideration on appeal.

9. Same: assessment: review.

Though the evidence is somewhat conflicting, the record leaves no doubt but that the improvement will prove a benefit to appellant's land. True the tile drains laid therein had outlets, such as they were, but not equal in efficiency to those furnished by the proposed improvement. Three strings of tile with branches had been laid in appellant's land along the draws or swales, and each of these discharged

10. Same: assessments: additional benefits.

near the highway; the mouth of the tile being about two feet below the surface where ditches were excavated. The fall was such as to force the water down, and, as these ditches filled, it flowed over into the highway and through culverts, along the natural courses or depressions, onto the servient estate. The evidence is undisputed that the tile merely carried the water below the surface, which would otherwise have followed the drains and flowed onto the land below in the same course as it did before the tile were laid. However, the land was wet in the vicinity of the excavations into which the water flowed and in the road beyond; and in times of heavy rainfall trouble likely would be experienced by water being held back in the tile. Surely the tile drain would be much more valuable connected with the outlets afforded by the proposed district improvement. This furnished ample justification for the recommendation of the commissioners that appellant's land be assessed in some amount; but the record is without support for the increase ordered by the board of supervisors, save on the theory that appellant was required to care for the water discharged from her tile into the existing natural depressions or water courses.

She had the right to conduct the surface water into the courses or depressions extending into her neighbor's land which nature had provided, and through which it had

II. SAME: estimate of benefits. previously flowed. *Dorr v. Simmerson,* 127 Iowa, 551. The tiling of her land had not changed or increased the flow of water; and therefore she might allow it to pass onto the servient estate as before. *Plagge v. Mensing,* 126 Iowa, 737; *Hull v. Harker,* 130 Iowa, 190; section 1989-a53, Code Supp. In estimating the benefits to be conferred by the district improvement, these circumstances necessarily must be considered, and when considered exclude all doubt as to the error of the board of supervisors in increasing the assessments against the several quarters of the quarter section belonging to

appellant.    These will be reduced to the several amounts recommended by the commissioners.

Our conclusions are that the order establishing the drainage district should be, and it is affirmed, and that the order assessing the costs of the improvements be modified and affirmed.    One-half the costs will be taxed to each party.

On first appeal *affirmed,* and second appeal *modified* and *affirmed.*