W. H. ZINSER, ET AL. v. THE BOARD OF SUPERVISORS OF BUENA VISTA COUNTY, ET AL., Appellants.

**Drainage:** PETITION: DESCRIPTION OF LAND. The petition to a board of supervisors for the establishment of a drainage district need not describe the precise lands to be embraced therein, but will be sufficient if it points out the locality to be drained in a general way; and the fact that it erroneously asserts that all the lands included therein are subject to overflow and are too wet for cultivation will not deprive the board of jurisdiction.

**Same:** FORMATION OF DISTRICT: DUTY OF SURVEYOR: BENEFITS: HOW DETERMINED. In the formation of a drainage district the question to be determined is whether the lands embraced in the petition are to be benefited by the improvement, and to this end it is the duty of the engineer appointed by the board to examine and survey each tract, and to report to the auditor a particular description thereof and the manner in which the different tracts will be affected by the improvement, which report becomes the basis of future proceedings: this question of benefits cannot be referred to the assessment commissioners subsequently to be appointed.

**Same.** Where it is apparent that the surveyor made no survey of the various tracts embraced in the proposed district, and neither reported nor intended to report that each particular tract described would be affected, nor even expressed an opinion based on actual examination that the lands described by him should be in the district, but in a general way simply returned all lands within the watershed, no basis was laid for the classification of lands and assessment of benefits; and the supervisors were not justified in ordering the construction of the proposed improvement.

**Same:** SPECIAL BENEFITS. Before land may properly be included in a drainage district it must be determined that in all reasonable probability it will receive some special benefit thereby, otherwise the owner is entitled to enjoy his natural advantages for carrying

away his surface water, and is under no obligation to assist the owner of a serviant estate in getting rid of such as naturally flows onto his land.

**Drainage district:** REFUSAL TO ESTABLISH: ABUSE OF DISCRETION. Where a proposed drainage district includes a large area of land and there has been no accurate survey of each tract, so that a definite determination of the acreage which should be included and the accruing benefits is impossible, and where it is evident that complete reclamation of the lands involves additional improvement of which no estimate of cost is made, a refusal of the board to order the improvement because of excessive cost, and that the damages awarded constituted a greater burden than should be borne by the land benefited, was not an abuse of the discretion.

*Appeal from Buena Vista District Court.*—HON. A. D. BAILIE, Judge.

MONDAY, DECEMBER 16, 1907.

REHEARING DENIED, TUESDAY, MARCH 17, 1908.

APPEAL from an order of the district court reversing a resolution of the board of supervisors of Buena Vista county denying a petition praying for action appropriate to the drainage of a large body of land. Some of the petitioners appeal.— *Reversed.*

*Edson & Moulton* and *Healy & Healy,* for appellants.

*F. F. Faville,* for appellees.

LADD, J.— The board of supervisors of Buena Vista county in special session February 21, 1906, for the consideration of the amount of damages to be awarded in drainage district No. 4, decided " that the cost of construction and the amount of damages awarded is excessive and is a greater burden than should be properly borne by the land benefited by the said improvement; therefore the prayer of the petitioners is denied." The board had adjourned to this date after full hearing of petitioners and those filing protests about two weeks previous, when there had been a finding that it had

jurisdiction that proper notice had been given as required by law, that the petition was sufficient in matter and .form, and it had resolved "that the improvement called for by said petition would be conducive to the public health, convenience, and welfare, and would be of public benefit and utility." Thereupon four of the petitioners and two other persons interested caused notice of appeal to the district court to be served and a transcript of the proceedings to be filed with the clerk. The board of supervisors and remonstrants then moved that the appeal be dismissed as unauthorized by law. The motion was overruled, and this is the first error assigned. The statute was amended by section 4 of the Acts of the 31st General Assembly (Laws 1906, chapter 85) so as to expressly authorize an appeal from the refusal of the board of supervisors to establish a drainage district. In view of this, the determination of whether the ruling on this motion was erroneous would be of no practical value save in the case at bar, and as the order therein must be reversed on other grounds the point will not be considered.

II.   The petition described all the land in the watershed at the head waters of the Coon river, and the civil engineer appointed under the provisions of section 2 of the act pro-

1. DRAINAGE: petition: description of lands.

ceeded on the theory that commissioners subsequently to be appointed by the supervisors were to determine the extent of the district, and that he was not required to recommend what lands should be included therein. The petition cannot be expected to be exact, as it is drawn prior to the survey and is merely a preliminary paper. If more land should be covered by the district than described therein, the engineer must so recommend; if less, he should favor the elimination of part; and the fact that the petition asserts that all land included therein is subject to overflow or too wet for cultivation when this is not so will not deprive the board of jurisdiction, as contended by appellant. Indeed, about the only office of the petition, aside from alleging the character of the land and the nature of the improvement, seems to be to point out the locality to be drained,

in a general way, and to indicate those who are to give security for the preliminary costs and expenses to be paid in event the petition shall be rejected by the board of supervisors.

III.    Appellants contend that, even if this be so, the report of the civil engineer appointed by the board of supervisors to survey was not such as to warrant that body in establishing a drainage district.    Some of the lands included in the petition were omitted, but practically all within the watershed were returned as properly within the district.    The engineer seems to have been of erroneous opinion that being in the watershed was sufficient reason for the inclusion of lands in his report, and that the duty of fixing the limits of the district did not devolve upon him, but upon the assessment commissioners.    Ascertaining the limits of the watershed was of no importance save in indicating the trend of drainage and what the dimensions of the ditch should be.    The body of land to be described in the petition is that subject to overflow or too wet for cultivation, and the duty is enjoined upon the engineer to " examine and survey the lands described in said petition, and other lands if necessary, and locate such improvement or improvements as may be petitioned for along the route described in the petition, or other route answering the same purpose if found more practicable or feasible, as will be for the public health or utility, or conducive to the public health, convenience, or welfare, and he shall make return of his proceedings to the county auditor, which return shall set forth a full and complete description of all lands which in his opinion will be affected by said improvement or improvements, and the names of the owners thereof as they appear in the transfer books of the auditor's office, and he shall also return a plat and profile of said lands and proposed improvement or improvements with the levels and elevations of the same thereon, and how said different tracts of land will be affected thereby, and the course and length of the drain or drains through each tract of land, and its situation

2. SAME: formation of district: duty of surveyor: benefits: how determined.

and elevation so far as he may deem necessary, together with the probable costs, and such other facts and recommendations as he may deem material."

The test to be applied is whether the tract of a particular owner will be affected by the improvement, and to aid the board in the establishment of the district the engineer is required to return such only and to state how, and in what manner, the different tracts will be affected. This return of the engineer is the basis of all subsequent proceedings. The allegations of the petitions may be and usually are partisan and not scientifically accurate. The return of the engineer, however, is the report of a disinterested expert, and so highly esteemed by the law that it, rather than the petition, determines upon whom notice shall be served; and when no claim for damages is filed, and there is no controversy with any landowner as to whether his land shall be included within the district, the supervisors may, if deemed advisable, locate and establish the same in accordance with the recommendation of the engineer, if " they shall find such improvement conducive to the public health, convenience or welfare or to the public benefit or utility." Section 5, chapter 68, Acts 30th General Assembly.

The law contemplates the establishment of the district as returned by the engineer, save as changed by the board of supervisors upon the protest of some landowner that his land has been improperly included within the proposed district or that lands of others have been improperly excluded. And where there is no appeal therefrom, the order of the board of supervisors, based thereon, establishing the district, is conclusive that all the lands included therein will be benefited by the improvement. Section 6 of said act authorizing the appointment of the commissioners and directing the classification and assessment of the lands expressly so provides, and this court has upheld this provision on the sole ground that the landowner has had an opportunity to be heard on the return of the engineer as to whether his land shall be included in the district. *Oliver v. Monona County,* 117 Iowa, 43.

The objection to deferring this to the assessment commissioners is that under the language of the statute such commissioners cannot be appointed until after the drainage district has been established.    They are to assume that all land within the district is benefited, and to classify and assess accordingly.    Section 12 of said act.    Without an adequate survey they would experience great difficulty in classifying and assessing the different tracts of land according to the benefits conferred.    It is not contemplated that they shall survey the lands, though they are not prohibited from so doing, nor is it essential that the engineer appointed to survey be designated as one of the assessment commissioners.    Another may be chosen, and in either event his report should contain sufficient data to enable them to perform their duties without a resurvey of the lands.

IV.    The members of the board of supervisors are not presumed to be men of science and familiar with drainage of large areas of land.    For this reason the law has authorized the selection of a competent engineer and delegated to

3. SAME.

him the duties heretofore mentioned.    Unless he performs them there is no assurance that the work will be prosecuted on scientific or economic lines.    All interested have the right to know from him (1) whether in his opinion the improvement should be made, and, if so, (2) the character of such improvement, (3) the several tracts of land which will be affected and how each will be affected, (4) the probable cost of the improvement, and (5) such other matters as he may deem material.    Does the report in this case meet these requirements ?    The main ditch and laterals are described with sufficient accuracy and are accompanied with appropriate estimates.    These are followed by the expression " of the opinion that the construction of the improvements as herein outlined will be of inestimable value to the lands within the watersheds sought to be improved."    The plat indicated the names of the several owners.    Subdivisional lots in Marathon and Rembrandt are excluded because

on the verge of the watershed, and but remotely affected. Lands in two sections adjacent to the discharge of laterals are excluded from the benefited area. The return closes with the statement that the lands along the lines of these proposed improvements show that they may have been repeatedly overflowed, rendering many of them unfit for cultivation and many acres almost useless for grass or pasture. But for the engineer's testimony, it might be inferred from the report that in his opinion all lands included would be affected by the improvement, though not indicating in what manner. But he did not even visit every tract or section in the area, but, under legal advice, " simply returned all lands within the watershed," as he " saw no better way than to regard the entire tract." He testified on cross-examination: " It was my conclusion that anything within the drainage district or within the watershed was benefited to some extent, very little possibly in some respects, but to some extent at least, by the simple reason that the outlet was brought to a nearer point, or to a more practicable point for them to get at, than it was in its natural condition. I simply returned it as all lands within the watershed. I didn't feel as though I was competent to pass on whether any substantial advantage would accrue or not. I considered all affecting conditions as far as I could see them. There are very few lands within the district that I have not personally examined. I have examined them only in a general way for the purpose of ascertaining whether or not they would be benefited by the construction of this ditch. I have done it for that purpose since my appointment as commissioner — as to the lands that I attempted to show any connection with within the engineering appointment. I did not visit every tract shown in the map and plat, and never considered it necessary." On redirect: "To the best of my knowledge I didn't return any lands shown within the returned plats as lands within the watershed that didn't belong there. I returned the lands governed by the watershed line. As near as I could conclude,

the proposed boundaries of the drainage district as shown by my report were the watershed lines.   I concluded from the best advice I could get that the final determination as to whether a tract of land should or should not be in the drainage district was not a matter for me to determine in my report.   I was governed entirely by the watershed in that report.   I made the report with that understanding.   It was my intention and purpose to report these lands for the purpose of furnishing information and a guide as to the lands that were tributary and drained toward the water course arranged.   The question as to whether lands fifty feet above the mouth of this outlet would or would not be benefited was a point that I should not attempt to pass on, because it would ultimately come up to the board appointed for that purpose. I knew that I could not arbitrarily pick out a farm and say whether it should be in or should not be in."

This evidence leaves no doubt as to the interpretation which should be given his return.   He neither reported nor intended to report that each particular tract described by him would be affected by the improvement, nor how, nor did he undertake to express his opinion from a survey actually made that all the lands by him described should be in the district. It is possible that the tracts remote from the ditch will be affected in some way by it, but it does not so appear from the report nor from the evidence adduced.   But the benefits which will be enjoyed by all citizens alike are not those for which land may be assessed.   Section 2 of the act provides that the petition shall describe lands " subject to overflow or too wet for cultivation."   Under section 2 the engineer "shall make a full and complete description of all lands which in his opinion will be affected by said improvement or improvements."   Then the commissioners subsequently appointed " personally inspect and classify all the lands benefited by the location and construction of such levee or drainage district, or the repairing or reopening of the same, in tracts of forty acres or less according to the legal or recog-

nized subdivisions in a graduated scale of benefits, to be numbered according to the benefit to be received by the proposed improvement; and they shall make an equitable apportionment of the costs, expenses, costs of construction, fees, and damages assessed for the construction of any such improvement, or the repairing or the reopening of the same, and make report thereof in writing to the board of supervisors. In making the said estimate the lands receiving the greatest benefit shall be marked on a scale of one hundred, and those benefited in a less degree shall be marked with such percentage of one hundred as the benefit received bears in proportion thereto. This classification when finally established shall remain as a basis for all future assessments connected with the objects of said levee or drainage district, unless the board for good cause shall authorize a revision thereof." So that the land to be included in the district must derive some benefit from the improvement either in drainage directly or in being afforded an outlet for the excess of water to be drained therefrom or in accessibility or the like. *Chambliss v. Johnson,* 77 Iowa, 611. Whether directly affected, or in the means afforded to carry away water gathered through tiling or other ditches, is material only as bearing on the classification by the commissioners. But if so located that drainage will not benefit it, or so that it will drain quite as well in the lowlands or sloughs as they will through the ditch excavated, and it is not made more accessible or the like, then it is not benefited within the meaning of the statute. In other words, there can be no assessment on lands merely because of the improvement of others near by. The land itself or its immediate surroundings must be affected by the improvement in order to justify its inclusion in the drainage district. This rule, sustained by the authorities, is analogous to that relating to the establishment of highways with reference to which Judge Dillon in his work on Municipal Corporations, vol. 2, section 624, says: " Now, benefits and injuries are of two kinds: (1) General or public, being such as are not peculiar

to the particular proprietor, part of whose property is taken, but those benefits in which he shares and those injuries which he sustains in common with the community or locality at large.   (2) Special or local, being those peculiar to the particular landowner, part of whose property is appropriated, and which are not common to the community or locality at large, such, on the one hand, as rendering his adjoining lands more useful and convenient to him, or otherwise giving them a peculiar increase in value, and, on the other, rendering them less useful or convenient, or otherwise, in a peculiar way, diminishing their value.   The former class of benefits or injuries, namely, those which are general and not special, have according to the almost uniform course of decisions, no place in the inquiry of damages, and cannot be considered for the purpose of reducing the amount, being too indirect and contingent; but injuries which especially affect the proprietor, or benefits which are especially conferred upon his adjacent property, part of which is taken, are to be considered; unless, by the constitution of the State, or legislative enactment, all benefits, special as well as general, are to be excluded."   In *Lipes v. Hand,* 104 Ind. 503 (1 N. E. 871), the court, speaking through Elliott, J., concluded that: "Whatever gives an additional value to the particular parcel of land is a special, and not a general, benefit; and it may be a special benefit although not an immediate one.   Suppose, for illustration, that the person assessed owns a tract of land situated on a knoll, and well drained in every part, but on all sides of it are great ponds, rendering access difficult, and isolating it from highways.   A drainage of the ponds would benefit the landowner, although it might not carry any water at all immediately from his land; and such a benefit would be a special and not a general one."   In Sutherland on Damages, 441, 452, the author lays down the rule that " these benefits are estimated like damages," and that in doing so the general rule in estimating value is that " everything which gives the land intrinsic value is to be taken into consideration."

By the language of the statute the land to be included in the district must in some way be affected by the improvement, and, to benefit it, necessarily this must increase its value, either by relieving it of some burden, or by making it adapted for a different purpose, or better adapted for the purpose for which it is used. It is manifest, then, that a prerequisite to the inclusion of any tract of land in the district proposed by the engineer is that it will in all reasonable probability derive some special benefit from the improvement. If, owing to its location, the construction of a ditch will not drain the land any more or differently than is done by the existing swale or swamp, or render it more accessible, or affect its immediate surroundings, then it is not benefited, even though the ditch may carry off the water. When lands are so situated, there is imposed on those below a natural servitude to receive such waters as naturally flow therefrom. The reason for this is that the water naturally descends, so that in the course of nature it must flow from a higher to a lower level, and the owner is entitled to enjoy his property with such natural advantages as are derived from its situation, and is under no obligation to assist the owner of the servient estate to get rid of the water flowing on his land. *Blue v. Wentz,* 54 Ohio St. 247 (43 N. E. 493). See *Beals v. James,* 173 Mass. 591 (54 N. E. 245). So that land may be in the watershed and not be affected by the excavation of the ditch in a way to confer any special benefit, and the evidence in this case shows conclusively that between fifty thousand and eighty thousand acres of land were improperly included in the district. Two hundred and twenty-five owners of land, most of which will not derive any benefit save that enjoyed by citizens generally from the proposed improvement, protested against it, mainly because large tracts of land, including their own, would not be affected thereby. There could have been but one purpose in including much of this area in the original petition, and that was to compel

4. SAME: special benefits.

those owning well-drained lands within the watershed to contribute to reclaiming the wet and overflowed slough lands of the petitioners. The engineer's conception of his duties, even though entertained in good faith — and this is not questioned — tended to promote this enterprise. The result is sufficient condemnation, and strongly emphasizes the necessity of a separate examination of each tract, with a definite report by a disinterested expert whether it will be affected by the improvement, and how, as specially exacted by the statute. Until such a return, in substance at least, has been made by the engineer, so that the board of supervisors has his recommendation of what lands shall be included in the drainage district, it ought not to order the construction of the proposed improvement. This objection was raised in the protest filed, and alone justifies the action of the board, in declining to establish the district.

V. That the excavation of ditches as recommended by the engineer will drain effectually a large body of land is fully established by the evidence, and had the owners of such lands been content to pay for these improvements from assessments to be levied thereon, instead of seeking to raise a large portion of the expense by including large tracts which would not be benefited within the district, less opposition doubtless would have been encountered. Without reviewing the evidence in detail it is enough to say that it fairly establishes that the fall was such that the ditches proposed and Coon river are adequate to carry off the water which would be accumulated within a reasonable time. The particular ground upon which the board of supervisors based its refusal to order the improvement was that " the cost of construction and amount of damages awarded is excessive, and is a greater burden than should be properly borne by the land benefited by the said improvement." The estimated outlay was $162,899.60, besides $7,700 in damages. Probably five thousand acres of land, entirely unproductive, would be reclaimed, and six thousand

5. DRAINAGE DISTRICT: refusal to establish: abuse of discretion.

acres now subject to overflow and too wet for cultivation would be rendered suitable for cultivation. Besides these eight thousand acres at least would be greatly benefited. Possibly other lands would be improved, though not an extensive area. In the absence of an accurate survey of each tract, it is impossible to determine definitely the acreage which the engineer would have included in the proposed district. It must be admitted that the expenditures contemplated are large. To fully reclaim these lands it will be necessary to excavate several lateral ditches not provided for. What these would cost is not disclosed by the record before us. To completely reclaim the land, much of it must be tiled, and no estimate of the cost of this is to be found in the record. The probable expense of these necessarily must be taken into account, as the only estimate of the value of the lands after the improvement is as reclaimed, and to fully reclaim them the excavation of additional laterals and tile drainage is essential. Had the benefits to be derived from the construction of the improvement proposed alone been taken into account in stating the increased value of the land, the necessity of the evidence mentioned would have been obviated. And then there is always some risk as to the success of the enterprise, not to be overlooked. Should complete drainage be effected, the value of a large tract of land would be greatly enhanced; but in view of these matters, together with the uncertainty as to the extent of the district which should be established and the consequent lack of information as to the amounts of assessments probable, it cannot be said that the supervisors abused the discretion, which they were required to exercise in refusing to establish the drainage district. *Temple v. Hamilton Co.* 134 Ia. 706. Another point was raised but not fully argued, for that reason is not determined.— *Reversed.*