L. LAURENCE ET AL., Appellants, v. BOARD OF SUPERVISORS OF PAGE COUNTY ET AL.

**Drainage:** ESTABLISHMENT OF DISTRICTS: RETURN OF ENGINEER. Where the return of an engineer in a proceeding to establish a drainage district contains a list of lands proposed to be included within the district, described by government subdivisions and with the names of the owners thereof, it sufficiently defines the boundaries of the district and constitutes a description of each tract of land therein as required by statute; the return need not embrace a diagram of the district showing its boundaries.

**Same:** SURVEY OF DISTRICTS. Under the present statute the engineer

in making a preliminary survey of a proposed drainage district is only required to give the elevation of lakes, ponds and deep depressions; he is not required to determine and report how the various tracts of land will be affected by the improvement, but this matter is left for investigation and report in the subsequent permanent survey to be made.

Same: IMPROVEMENT OF NATURAL WATER COURSE: ELEVATION OF PONDS AND DEPRESSIONS. Where the proposed improvement consists in straightening the channel of a stream to facilitate the flow of water during periods of excessive rainfall so that adjoining lands may not be flooded, the elevation of lakes, ponds and deep depressions in the proposed district is immaterial; since the statute contemplates that after the principal improvement has been made subordinate or lateral drains may be established in the district for the purpose of draining the ponds and depressions therein, and then the question of their elevation becomes material.

Same: LATERAL DRAINS: SURVEY AND REPORT. Where a proposed drainage improvement is for the purpose of straightening a natural water course the return of the engineer need not show what lateral drains would be required to relieve the land within the district of surface water, and especially to drain ponds and depressions found therein. Nor need the return show the method or expense of connecting the lateral drains with the main ditch, to give the supervisors the necessary information to enable them to determine the practicability of the entire enterprise.

Same: ESTABLISHMENT OF DISTRICT: ORDER OF SUPERVISORS. Where the supervisors acting upon the representations of the engineer showing the course of a proposed ditch, its width, depth, length and termini, and an estimate of its probable cost with recommendation that it be constructed as thus described, made a record that the improvement would be of public benefit and utility, but requested the engineer to make further report, which he did, showing a proposed change in a portion of the ditch with an estimate of the additional expense, and the board thereupon established the district in accord with the recommendations of the engineer and its former action, the establishment was of the entire improvement and not merely that part covered by the second report.

Same: CHANGE IN IMPROVEMENT: COST: DISCRETION. Discretion as to the cost of constructing a drainage system is lodged with the board of supervisors and not with the engineer, and if it is justified in believing that a larger ditch than that recommended by the engineer will be more efficient and that the in-

creased cost will be justified by the additional benefit, it may modify the report by increasing the size of the ditch; although the board might not have power to reduce the size of the ditch where the engineer recommended one of a certain capacity as necessary for the desired purpose.

*Appeal from Page District Court.*—HON. A. B. THORNELL, Judge.

TUESDAY, MAY 2, 1911.

FROM the action of the defendant Board of Supervisors in establishing a drainage district and providing for the construction of a ditch therein, the cost to be assessed upon the lands included within such district, the plaintiffs who had objected before the board to the establishment of such drainage district appealed to the district court from its action. After hearing this appeal on its merits, the court entered a decree dismissing the appeal, and the appellants in the district court have prosecuted their further appeal to this court. *Affirmed.*

*J. M. Junkin* and *Ralph Pringle,* for appellants.

*Parslow & Peters* and *H. H. Scott,* for appellees.

McCLAIN, J.—The grounds of objection urged by the appellants before the board of supervisors were somewhat indefinite in character; but the objections urged on this appeal which may be considered to have been sufficiently raised before the board and on appeal before the district court are that the cost was excessive, resulting in a greater burden than should be properly borne by the land benefited; that the improvement was ordered without the recommendation of an engineer; that the action of the board as properly construed involved the construction of a ditch for only a small portion of the distance for which the im-

provement was contemplated; that the finding of the engineer did not show the lakes, ponds, and deep depressions within the contemplated district and their elevations nor the lateral ditches, drains, and watercourses, and the cost of their connection with the proposed ditch; that such finding did not show a description of each tract of land to be contained within the district and the name of the owner thereof nor the boundaries of such district; and in general that such finding furnished insufficient data on which the board could act intelligently in establishing such district and providing for such improvement. Counsel have not observed the order of their objections in their argument, nor shall we do so in disposing of them; but the points suggested will be covered in the course of this opinion, and the facts appearing on the record as to the action of the board and the nature of the improvement will be stated as occasion may require in connection with the discussion of the objections urged.

As these objections relate principally to the sufficiency of the engineer's report and findings which are by statute made a necessary basis for the action of the board, we set out the provisions on that subject which are a part of section 2, chapter 68, Acts of the Thirtieth General Assembly, as amended by section 1, chapter 94, of the Acts of the Thirty-Second General Assembly (Code Supplement 1907, section 1989-a2); these being the statutory provisions under which this proceeding was prosecuted before the board. After providing for a petition and the appointment by the .board of a disinterested and competent engineer who is to proceed to examine the lands described in the petition or which would be benefited by the improvement and "survey and locate such drains, ditch or ditches, improvement or improvements, as may be practicable and feasible to carry out the purpose of the petition and which are a public benefit or utility or conducive to public health, convenience, or welfare," it is further pro-

vided, as to the return of such engineer, as follows: "He shall make return of his proceedings to the county auditor, which return shall set forth the starting point, the route, the terminus or termini of said ditch, or ditches, drain or drains, or other improvements, together with the plat and profile showing the ditches, drains or other improvement, and the course and length of the drain or drains through each tract of land and the elevation of all lakes, ponds, and deep depressions in said district and the boundary of the proposed district, and the description of each tract of land therein and names of the owners thereof as shown by the transfer books in the auditor's office, together with the probable cost and such other facts and recommendations as he may deem material. . . ." It is further provided (Code Supplement, section 1989-a3), that upon filing the engineer's return, if the same recommends the establishment of the drainage district, the board shall examine such return, and, if the plan seems to be expedient and meets with the approval of the board, it shall direct the auditor to cause a notice to be given, etc., and further, it is provided (Code Supplement, section 1989-a5), that if the board shall find that the improvement will be conducive to the public health, benefit, or utility, they may, if deemed advisable, locate and establish the improvement "in accordance with the recommendations of the engineer or they may refuse to establish the same as they may deem best."

I.    The objection that the return of the engineer did not show the boundary of the proposed district and the description of each tract of land therein and the names

1. DRAINAGE: establishment of districts: return of engineer.

of the owners thereof is without merit. Accompanying a plat of the proposed improvement, the duly appointed engineer returned a list of lands described by government subdivisions with the names of the owners thereof, which he proposed should be included within the district. Such

return sufficiently defined the boundaries of the district and constituted a description of each tract of land therein. We find nothing in the statute to indicate that the engineer should draw a diagram of the district showing its boundaries. The platting is required of the proposed improvement to show the tracts of land through which it is to be established. The return, of course, may be in the form of a plat showing by location thereon all the tracts of land in the proposed district and the names of the owners as well as such other data as are required to be shown by a plat; but there is no necessity that we can see under the statute to make a plat showing the entire boundaries of the proposed district and all the tracts of land included therein.

II. The objection that the return of the engineer does not sufficiently show elevations is also without merit. Section 2 of chapter 68, Acts of the Thirtieth General Assembly, required the engineer's return to include "a plat and profile of the lands included within the proposed district with the levels and elevations of the same thereon and how said different plats of land will be affected thereby." The portion of the section which included this language was repealed by section 1, chapter 94, Acts of the Thirty-Second General Assembly, and the language which has already been quoted was substituted; and it appears that the only showing which is necessary to be made in the return as to elevations relates to "the elevation of all lakes, ponds, and deep depressions in said district." Counsel in argument erroneously quote the statutory language set out at the beginning of this opinion as though it were found in section 1, chapter 68, Acts of the Thirtieth General Assembly, and, comparing that language with Code, section 1940, argue that it constitutes a new and independent requirement about elevations. The confusion is easily explained in view of the way in which the statute has been put to-

2. SAME: survey of district.

gether in successive amendments; but in fact the provisions as to reporting elevations in the Act of the Thirtieth General Assembly were much broader, as already indicated, and the purpose of the amendment made by the Thirty-Second General Assembly (section 1, chapter 94), was to relieve the engineer from making this detailed statement as to the elevations of the different tracts of land in his preliminary report as to the practicability of the enterprise and leave those details to be furnished in his subsequent "permanent survey of said ditch as so located, showing the levels and elevations of each forty-acre tract of land," on which permanent survey assessment of damages to the lands through which the ditch is to be constructed may be based, and which shall also be taken into account as we infer in assessing the benefits on each of the tracts of land within the district. See Code Supp. section 1989-a6. In the case of *Zinser v. Board of Supervisors,* 137 Iowa, 660, the court comments upon the failure of the engineer to visit each tract of land for the purpose of determining whether it would be benefited by the improvement and make report as to how each would be affected. But that case related to proceedings under chapter 68, Acts of the Thirtieth General Assembly, above referred to, which required these matters to be returned by the engineer in his first report, and the court treats the matters thus required to be returned as essential in determining the final assessment of benefits. As we have already pointed out, the statute as now in force does not require the engineer in his preliminary report on which the board is to determine as to whether it shall establish the district and order the improvement to describe how the various tracts of land shall be affected, but leaves that matter to be subsequently investigated by him and reported in a permanent survey. So far, therefore, as the *Zinser* case can have any application to the sufficiency of the return as to elevations, it has no bearing on the present case.

Now, the portion of the statute, which we have not taken the space to quote, but which may be sufficiently referred to by general description, provides for the establishment of levees, ditches, drains, and watercourses, and the straightening, widening, deepening, and changing of any natural watercourse whenever the same will be of public utility, etc., and the drainage of surface waters from agricultural lands. It is evident that the Legislature could not have contemplated that the return of the engineer for one kind of improvement must necessarily contain the same data as would be required for a wholly different improvement. If, for instance, a district were being created for the purpose of establishing an improvement consisting of a ditch for the drainage of surface waters from agricultural lands, it would be quite important that the elevations of lakes, ponds, and deep depressions should be given, for otherwise the board of supervisors could not pass upon the sufficiency of the proposed plan. But the improvement proposed in this case, and which the board of supervisors attempted to establish, was a ditch about thirteen miles in length along the course of the Nodaway river, at the ordinary stage of water an inconsiderable stream, by which the channel of the stream should be reduced from twenty-seven miles and the average fall per mile should be increased from one and three-fourths feet to three and one-half feet. For about three and one-third miles of this total distance of thirteen miles the ditch would coincide with the channel of the river, leaving nine and two-thirds miles to be excavated. The purpose of this proposed ditch is to facilitate the flow of water during periods of excessive rainfall so that adjoining lands may not be flooded. That the straightening of the channel of a very tortuous stream, such as this is, tends to prevent the overflow of adjoining lands during periods of high water is well known, and the evidence shows without sub-

3. **Same:** improvement of natural watercourse: elevation of ponds and depressions.

stantial controversy that the lands included within the
proposed district have been subject to overflow during such
periods.   It is perfectly plain from the report of the engi-
neer, the action of the board of supervisors, and the evi-
dence contained in this record, that the purpose of the
proposed improvement was the statutory purpose of straight-
ening a natural watercourse, and not the wholly distinct
statutory purpose of draining surface water from agricul-
tural lands.   For this purpose the elevation of lakes, ponds,
and deep depressions in the proposed district were wholly
immaterial.   A statutory purpose could be accomplished
by preventing the overflow of water from the river, al-
though the improvement had no tendency to relieve ad-
joining lands from the surface waters which might natur-
ally accumulate thereon not coming from the river.   As
a matter of fact, the engineer's plat did show the eleva-
tions of two ponds, which, as we understand the testi-
mony, constituted the principal ponds in the adjacent ter-
ritory.   However this may be, we are satisfied that in giv-
ing the elevations of the land along the proposed ditch and
those of the bottom of the ditch where it intersected the
river at various points, the engineer substantially com-
plied with the statutory requirements, so far as they are
applicable to the proposed improvement.

III.   It is also objected that the return of the engi-
neer did not show what lateral drains would be necessary
to relieve the land within the district of its surface water
and especially to drain the ponds and de-
pressions found therein.   What has already
been said disposes of this objection.   It was
not proposed to drain the surface water from agricultural
lands, but to straighten a natural watercourse.   That other
improvements might be found desirable for the purpose
of draining the water from these ponds and depressions
is now wholly immaterial.   The statute plainly contem-
plates that after a principal improvement has been made,

4. SAME: lateral
drains: sur-
vey and
report.

other improvements subordinate thereto may be established in districts which may include portions of the district created for the principal improvement. See Code Supplement, sections 1908, 1909-a13, 1909-a23; In re Hay Drainage District, 146 Iowa, 280.

It is contended, however, that the return of the engineer did not show the method or expense of connecting the small ditches and watercourses, which at present empty into the river, with the proposed ditch, and that therefore the members of the board did not have the necessary information to enable them to judge as to the practicability of the entire enterprise. The proposed ditch is deeper than the channel of the river, and each portion of the river will empty into it at some point. When the ditch is constructed, there will still be an outlet into the ditch for all the water coming from lateral ditches and streams now existing. It is argued that in time the old channel of the river will be filled up. However this may be, there is nothing in the record to indicate and nothing in the general knowledge possessed by the members of this court to suggest that the water from collateral streams and ditches will not keep open for itself and in accordance with the laws of nature an outlet into the proposed ditch. We think this objection to be wholly speculative and to have no material bearing upon the practicability of the proposed improvement for the purposes for which it is to be made nor upon the question as to its substantial cost.

Much reliance is placed for appellants on the opinion handed down by this court in the case of Focht v. Board of Supervisors, In re Nishnabotna River Improvement District, 145 Iowa, 130; but, as said in that opinion as to another case: "In arriving at the doctrine announced in any case, we must always have in mind the particular facts in regard to that case, the arguments used, and the conclusion reached. Not every statement found in a judicial opinion is to be regarded as the law of the case.

Much that is said by way of argument is to be regarded as *dictum,* and the case is authority for nothing more than it expressly decides." The *Focht* case was one in which the district court had set aside an order establishing a river improvement and drainage district on the ground that its establishment was not for the best interests of the landowners in the district. This court, giving some weight to the finding of the lower court because of its superior opportunities to understand the exact situation by reason of having the witnesses before it and to know the very truth of the matter, sustained the trial court, holding, among other things, that the uncertainty of the method and cost of connecting lateral streams and ditches might have been considered by the lower court in reaching the conclusion that the entire scheme was so incomplete, so problematical, and the expense so uncertain as to justify the reversal of the action of the board of supervisors. What is said in *Zinser v. Board of Supervisors,* 137 Iowa, 660, above referred to, with reference to the expense of laterals, has the same bearing; for in that case the action of the lower court in reversing a resolution of the board of supervisors denying a petition praying for the establishment of a drainage district was set aside on the ground that the report of the engineer did not show that the proposed scheme for the reclamation of land from surface water was practicable. In short, that case is authority only for the proposition that the board of supervisors is not bound to establish a drainage district until it has before it an engineer's report showing that the proposed improvement will be effectual for the purposes for which it is intended and that the cost of effecting that purpose is not excessive and a greater burden than should be properly borne by the land to be assessed therefor. In the case before us we have exactly the opposite situation. There is substantially no complaint made in argument as to the practicability of the scheme as a whole, and the

cost of the enterprise is easily to be estimated.   The trial
court, after a full consideration of the evidence, has sus-
tained the action of the board of supervisors, and we
should not feel justified, on merely technical objections to
the engineer's return, in setting it aside.   When the engi-
neer's plat was introduced in evidence in the lower court
it did show the elevations now insisted upon, and there is
no contention that the facts thus made to appear by the
plat corroborated by the engineer's testimony indicate · the
impropriety of the improvement.   The objection made is
that these data were not shown on the plat when it was
submitted to the board of supervisors for their action.
The objection is technical, and, as it relates to a matter
which appears to have been immaterial, we are not in-
clined to sustain it.

IV.   When the board acted there was before it a
plat of the engineer showing the proposed improvement
by course and also in profile, accompanied with a report
describing the width and depth of the pro-
5. SAME: establishment of district: order of supervisors. posed ditch as well as its length, termini,
etc., and giving an estimate of its probable
cost, and in this report the engineer recom-
mended the construction of the improvement thus de-
scribed.   At a subsequent meeting the board made a rec-
ord of a finding that the proposed improvement would be
conducive to the public benefit and utility, but that it
was deemed advisable to order the engineer to examine
further the proposed improvement and make a further
report.   The engineer did make such further report, in
which he recommended a change of course for a distance
of less than a mile in order to cut out another bend in
the river.   As this change took the ditch out of the river
bed at one point, it increased the amount of excavating
to the extent of about eight hundred linear feet, and to
that extent involved an increased expenditure.   In this
report, which recommended the establishment of the changed

course as of the same width and depth recommended in the original report—that is, a width of fifteen feet at the bottom with side slope of one-half foot horizontal measure to each foot vertical, and average depth of about fourteen and one-fourth feet—the engineer added the following: "At your verbal request I also submit an estimate of the yardage to be removed in a channel thirty-six feet wide at top, twenty feet at bottom, and an average depth of sixteen feet." He then compared the channel recommended by him as to length and cross-section with the one thus estimated, but made no recommendation with reference to the change in width and depth. Thereupon the board ordered that the dimensions adopted for the new channel be a bottom depth of twenty feet and an average depth of sixteen feet and side slopes of one-half foot horizontal, to one foot vertical, or an alternate channel of not less width and depth of bottom and equal cross-section, and after proper notice was given by the auditor and claims for damages were filed the board located and established the drainage district "in accordance with recommendations of the engineer" and its former action. It is now objected for appellants that the board in fact established only the short portion of the ditch described in the subsequent report; but this is clearly not in accordance with the record. It did attempt to establish the entire improvement recommended in the first report as modified in the second report, so that as to the course of the ditch the action of the board was based upon the recommendation of the engineer.

But the further and more material objection is that the engineer did not recommend a ditch of the dimensions adopted by the board; that is to say, the ditch recommended by the engineer was of less depth and width and would involve a smaller cost of construction. It is plain that the deeper and wider ditch would not be less effectual in accomplish-

6. Same: change in improvement: cost: discretion.

ing the purposes intended, and the only departure from the engineer's report was in constructing a ditch, which as the board believed would be more effective, but would involve some increase in cost of construction, though, as the evidence tends to show, not an increase proportioned to the increase in size.    We have therefore this question: May the board in the exercise of its discretion so modify the recommendations of the engineer as to increase the estimated cost for the purpose of securing what in the judgment of the board will be increased effectiveness? The engineer is required to report the probable cost of the proposed improvement; but the board is to determine for itself whether the cost of construction and amount of damages awarded make the improvement "a greater burden that should be properly borne by the improvement" (Code Supplement, section 1989-a6), and as to that matter no recommendation by the engineer is required.    If, in the belief that a larger ditch will be more efficient, and that the increased cost will be justified by the increased benefits to result from the improvement, the board sees fit to increase the size of the ditch as recommended by the engineer, we have no statutory authority for holding its action to be beyond the scope of its powers.    The discretion as to cost is with the board, and not with the engineer.    The evident purpose of the statute is to have the engineer exercise the expert judgment necessary in determining whether the scheme is feasible, and unless he recommends it as practical, desirable, and likely to be efficient for the purpose intended, the board can not establish it; but the relation of the benefit conferred to the value of the land to be benefited and the consequent desirability of the improvement on that basis is for the board.    In this case the engineer fixed the depth and width of the ditch recommended, not on the theory that it would be adequate at once to carry all the water coming down the Nodaway river during periods of flood, but in the belief

that a flow of water therein would be induced which would soon widen and deepen the new channel until it should have sufficient capacity to prevent the overflowing of the land to be benefited. This is made clear by the testimony of the engineer as a witness. Members of the board of supervisors testified that they became convinced the proposed depth would not be sufficient, and that while the channel would widen · rapidly during times of flood, it would not materially deepen, and they thought that a ditch both deeper and wider would be materially better for the purposes intended. This judgment on their part was not formed without individual efforts to obtain information by personal inspection of similar ditches on the same and other streams which had been constructed and in operation for several years.

What is said in *Zinser v. Board of Supervisors,* 137 Iowa, 660, already commented upon, with respect to the necessity of a report by a competent engineer, has reference to the land upon which assessment is to be made in accordance with the benefits. Indeed, that was a case relating to the establishment of the boundaries of the district, and the determination of the question whether the lands included in the district were properly so included, and not to the question whether the report of the engineer as to the proposed improvement was sufficiently definite to authorize its establishment. On this ground the case is clearly distinguishable from the one before us, for what is said therein as to the necessity for an engineer's report is without application to the present case.

The case of *Hartshorn v. District Court,* 142 Iowa, 72, is subject to the same explanation. In that case the lower court was reversed in establishing a district not recommended by the engineer and ordering an improvement in accordance with a plan which the engineer had not recommended. It was the efficiency of the proposed district and improvement as an engineering enterprise as to

which the report of the engineer was held conclusive on the board and the court in such sense that the district could not be established and the improvement ordered save on the recommendation of such engineer.

We can readily agree that if the engineer had recommended a ditch of a certain capacity as necessary for the purpose, the board could not have ordered the construction of a ditch of less capacity; but we see no reason for holding that if the board believed in the exercise of its reasonable judgment and in the light of the information available that a larger ditch would be more effective, it might not order the improvement at an increased expense, provided the increased expense would not make the enterprise a greater burden than should be borne by the land in view of the benefits to result.

We reach the conclusion that the objections made for appellants to the action of the lower court in affirming the proceedings of the board of supervisors are not well taken, and the decree is *affirmed*.