W. P. MAPEL, Appellant, v. BOARD OF SUPERVISORS OF CALHOUN COUNTY, Appellees.

**DRAINS: Establishment—Appeal—Excessive Cost—Burden of Proof.**
On appeal from an order establishing a public drainage improvement, appellant has the burden of *clearly* showing that the district was *improperly* established. Evidence reviewed, and held insufficient to justify the reversal of such an order on the ground that the cost would be excessive and a greater burden than should be borne by the benefited land.

*Appeal from Calhoun District Court.—E. G. ALBERT, Judge.*

FRIDAY, APRIL 6, 1917.

THE board of said county established a drainage district known as No. 198. The appellants, 23 in number, filed objections before the board of supervisors to the establishment of said district. The objections were not all on the same grounds. Some of them raised certain questions, and others different questions. The objection of some of the appellants covers the question presented here for determination. The objection argued and relied upon in this court involves the question as to whether the cost of construction is excessive, and a greater burden than should be properly borne by the land benefited by the improvement. No other issue is now insisted upon in this court. The board established the district, and thereupon the appellants appealed to the district court, where the finding was again against them, and they appeal to this court.—*Affirmed.*

*Robert Healy,* for appellants.

*Jacobs & McCaulley* and *Kenyon, Kelleher & Price,* for appellees.

PRESTON, J.—There are about 11,740 acres included in the district, and the cost for the improvement, with laterals, including damages allowed, is about $71,000. The board of supervisors found, in the order establishing the district, that the cost of construction would not be excessive, and that the improvement would be conducive to the public health, convenience, and to the public benefit and utility, and was a necessity. District No. 198 includes one or more smaller districts, which had been before established. In 1902 or 1903, a drainage district known as No. 7 in said county was established and con-

DRAINS: establishment: appeal: excessive cost: burden of proof.

structed.   It consisted of an open ditch about 5¼ miles in
length, and ran through flat and swampy land.   That part
of the county through which the ditch ran was at that time
built up, and the land farmed and occupied.   The plan pro-
vided for no lateral tile.   A part of the land within Dis-
trict No. 7 was subsequently taken into Districts Nos. 122,
194 and 133.   Several years after the establishment of No. 7,
a subdrainage district, known as No. 90, was established,
and this. had its outlet into No. 7.   As originally con-
structed, this District No. 7 emptied into a small ditch at
its southern terminus, and from there the water flowed to
the Boone River.   A number of landowners in District No.
7 attempted to take advantage of the improvement for the
drainage of their lands, but the soil was of such a charac-
ter that the ditch was filled to a considerable extent, in-
terfering with the surface drainage, and the tile opening in-
to it were submerged.   No. 7 was effective for the drainage
of a portion of the surface water adjacent to the line of
the ditch, but did not afford an adequate outlet for tile
drainage at the upper end of the district.   At various times
in recent years, and subsequent to the establishment of No.
90, practically all the landowners who drained into No. 7,
and some of the owners in Subdistrict No. 90, petitioned
the board of supervisors to clean out the ditch of No. 7.   At
one time, the board expended about $1,000 for men and
scrapers to clean out the ditch, but the money was sub-
stantially thrown away.   The cost of cleaning out No. 7
would have been about $12,000.   It was considered imprac-
ticable to clean out No. 7, and it was thought best that the
board should delay action until a more comprehensive
scheme of drainage could be carried out, and the work done
in a proper way.   We deem it unnecessary to go into detail
as to the effect of sufficient fall, the filling of the ditches
with tile, the submerging of the tile, the flooding of the dif-
ferent tracts of land, the effect upon farming operations,

and a number of other such matters which are detailed in the record. Some of the land was originally swamp land. The valley at one point is about 2,000 feet wide, and is very flat in places. There are ponds on some of the tracts included in the district. On the table land above the valley, there are flat lands and ponds, and only a small amount of rolling land.

In 1914, a petition was filed by two landowners, who owned over 800 acres at the upper end of No. 7, asking the establishment of District 198, which would commence at the upper end of No. 7 and include the territory of No. 7 and other land below it. Acting on this petition, the board appointed an engineer to make a report. This was done, and the engineer presented two reports. One of these was considered by the board and later was referred to the engineer for a supplemental report, and the grade line was changed and tile substituted for open work at certain points, and the testimony is that this was a better and more efficient plan. The plan adopted provided for branches, submains and laterals at various points along the line of the improvement. Preliminary to making this report, the engineer went over every 40-acre tract of the district, to ascertain the elevations and the course of the improvement, the size and depth of the tile, the course, dimensions, size and length of the laterals. The engineer who designed this improvement is shown to have been a man of wide and varied experience, and the plan designed by him seeks to establish an adequate and comprehensive drainage for all the land included within District No. 7, an outlet for Subdistrict No. 90, drainage of wet land which concededly needs drainage, and an adequate and feasible outlet for another district with outlet below the wet land just referred to. There is no question as to the condition of the land in the old District No. 7, and that the outlet of

some of the other districts was inadequate.   Relief was needed, in some way.

It is contended by appellants that the total number of acres of swamp land to be reclaimed by the construction of Drainage Ditch No. 198 is 35 or 40 acres, and that practically all this 11,000 acres is in a high state of cultivation and improvement.   But the testimony shows that between 1,300 and 1,400 acres of wet land were in the district, land that could not be farmed without tile in an ordinary year, the most of it being swamp and overflow land, partially relieved by the old District No. 7.   One witness puts it that there was a double acreage of low land in the district,—that is, 2,600 or 2,800 acres,—and that this low land was land that might be successfully farmed in an ordinary year, but would be benefited by tile.   Altogether, something over 4,000 acres of swamp, low or wet land was involved.

Appellants argue that, if they are to concede that there are 1,400 acres that would receive better drainage and a better outlet, and if they are compelled to pay the total cost of the construction of the improvement, it would be at the rate of $50 an acre.   But this is hardly a fair way to get at it, we think, because there is no question but that more land than this will be benefited in some degree, and the different tracts are to be assessed according to benefits, some more and some less; and, for the same reason, it is hardly fair to take the average cost per acre of all the land in the district, which in this case would be $6 or $7. In the case of *Mittman v. Farmer*, 162 Iowa, at page 375, the average cost per acre was about $11.   We there said that the principal objection of some of the landowners, as testified to by them, is that their assessment is too large, as compared with that of their neighbors.   But we do not understand that they claim to have shown that the cost of the work would be a burden if properly distributed over the entire district according to benefits.   But this is a matter

to be regulated in making the assessment, or by appeal therefrom. The testimony shows that the land will be worth $200 an acre after the system is completed, and that it is worth considerably less than that without the improvement. Some of the land had been assessed in the establishment of prior districts, but not all of it, and this also is a matter to be taken into account in making the assessments.

We have not attempted to give the entire situation, or the character and description of the different tracts of land and just how they will be benefited. We may have gone into the details more than necessary, because the propriety of establishing a district depends upon the general situation, and facts and circumstances of each particular case.

We started with the proposition that the appellants have the burden of showing that the district was improperly established, and that, in such a proceeding, there must be the clearest kind of showing that the officers have either acted without jurisdiction or have abused the powers conferred upon them, to justify interference by the court. *Mittman v. Farmer*, 162 Iowa 364; *Temple v. Hamilton County*, 134 Iowa 706, 711; *Hartshorn v. Wright County District Court*, 142 Iowa 72; *Lyon v. Board*, 155 Iowa 367; *Focht v. Fremont County*, 145 Iowa 130, 144; Section 1989-a46, Code Supplement, 1913; *Shaw v. Nelson*, 150 Iowa 559, 564; *Schumaker v. Edington*, 152 Iowa 596.

Appellees cite the following cases, to the point that the cost of the improvement in the instant case was not excessive: *In re Drainage District*, 146 Iowa 564; *Temple v. Hamilton County*, supra; *Mittman v. Farmer*, supra; *Laurence v. Page County*, 151 Iowa 182.

Appellants cite and rely upon *Focht v. Board of Supervisors*, 145 Iowa 130; *Harriman v. Board*, 169 Iowa 324; *Monson v. Board*, 167 Iowa 473; *Zinser v. Board*, 137 Iowa 660.

But some of these cases are upon points not involved

in the sole question raised in the instant case. The cases are not always helpful as to the fact question whether the cost is excessive, for the reason that the facts and the situation are often very different in the different cases. The *Focht* and *Zinser* cases, supra, are referred to in the case of *Laurence v. Page County,* supra, and the particular reasons why in those cases the action of the lower court in setting aside the establishment of the district would not be interfered with. In one case, the point was that, in regard to the uncertainty of the method and cost of connecting lateral streams and ditches, the lower court might have properly reached the conclusion that the entire scheme was so incomplete and problematical and the expense so uncertain as to justify the reversal of the action of the board; and in the other, that the report of the engineer did not show that the proposed scheme was practicable, and it was pointed out that the cases were authority only for the purpose of propositions therein decided.

We have not gone into all the matters argued and discussed by either side as to the propriety or impropriety of establishing this district. But the record has been examined, and, without further discussion, it is our conclusion that the findings and judgments of the district court are right, and they are affirmed in all the cases.—*Affirmed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.