J. C. HARKER, Appellant, v. BOARD OF SUPERVISORS OF GREENE COUNTY et al., Appellees.

DRAINS: Establishment—Inclusion of Lands—Justification. Record
1  reviewed, and held to justify the inclusion of appellant's land within a drainage district and the finding that said lands would be benefited.

DRAINS: Establishment—Notice—Jurisdiction. One who has had
2. due and repeated notice of a prolonged and somewhat *irregular* proceeding for the establishment of a drainage district, and who has appeared in response thereto and duly presented his objections, is left with no grounds upon which to question the jurisdiction of the board in establishing the district.

*Appeal from Greene District Court.—M. E. Hutchison, Judge.*

JUNE 21, 1917.

REHEARING DENIED DECEMBER 18, 1917.

THE board of supervisors established a drainage district and included certain lands of appellant therein. There was an appeal to the district court. The cause was tried and, at the close of the plaintiff's testimony, the court sustained a motion approving and confirming the action of the board of supervisors in the establishment of the district. The decree so provided. Appellant has appealed. The question involved is as to the right of the board, in establishing the district, to include appellant's lands.— *Affirmed.*

*J. F. Gallup,* for appellant.

*R. G. Howard* and *A. D. Howard,* for appellees.

PRESTON, J.—1. The board of supervisors passed a resolution approving the plan of the engineer, and ordered notice. Before the time set for hearing, appellant filed objections. The board by resolution found that other lands should have been included, and the engineer was ordered to plat the same and make a report. Notice was ordered and given as to owners of additional land so included, and the notice also included all landowners in the district, including the appellant. Thereafter, appellant again filed objections.

1. DRAINS: establishment: inclusion of lands: justification.

Appellees question the sufficiency of the objections filed to cover all those now urged. But a number of the objections or issues relied upon by appellant as to including his lands in the district are so closely connected that they may be stated in a general way, and substantially as appellant states them, as follows: .

Should lands be included in a drainage district establishment wherein the proposed drainage will not affect them in any different manner than the swales which by nature have served them for many years?

Should lands be included in a drainage district establishment simply because it is in the natural watershed of the district?

Should lands be included in a drainage district establishment because by nature their surplus waters are discharged onto other lands which it is desired should be drained?

Where lands by nature discharge their waters upon servient estates below, should such lands be included in a drainage district establishment for the benefit of such servient estates below?

2. Appellant says that, as to the fact situation, the case of *Zinser v. Board of Supervisors*, 137 Iowa 660, "is practically decisive of this case, except that, in that case, the decision was against the whole establishment because it was an attempt of servient owners to obtain aid from dominant estates, while in this case, we do not ask that the whole establishment be overthrown, but we ask that the plaintiff's lands which are included for the benefit of servient estates below be excluded from the district, and the *Zinser* case is authority therefor."

In the *Zinser* case, the board had denied a petition praying for the establishment of a drainage district, and on appeal the district court reversed the board, and this court reversed the district court, on the ground that the report of the engineer did not show that the proposed scheme for the reclamation of land from surface water was practicable. In *Lawrence v. Board of Supervisors*, 151 Iowa 182, at 192, we said of that case that it is authority only for the proposition that the board of supervisors is not bound to establish a drainage district until it has before it

an engineer's report showing that the proposed improvement will be effectual for the purposes for which it is intended, and that the cost of effecting that purpose is not excessive and a greater burden than should properly be borne by the land to be assessed therefor. In the instant case, the district was established. As said, the engineer reported favoring the establishment of the district and including appellant's land before additional lands were taken in. The importance of the report of the engineer was pointed out in the *Zinser* case; also in *Lyon v. Board of Supervisors,* 155 Iowa 367, 375. It should also be stated here that, since the determination of the *Zinser* case, there has been some change in the statute. Code Supplement, Section 1989-a2. But this amendment perhaps has no particular bearing upon the questions raised in the instant case.

It appears that waters from appellant's lands drained over the lower lands in the district; that, at the line between plaintiff's land and that below, it is flat, and the plat shows that there is some swamp land there, although appellant and another witness say it is not swamp, but wet. Appellant made tile drains upon his lands and emptied the waters into an old well, and the evidence is that it soaked away in the gravel. Appellees say that this would come up on the lower lands. Appellant admits that a part of his land is flat, about a quarter of a mile wide and a mile and a quarter long, that he desires to drain. The plat shows the drainage of this land to be over the lands of the others within the district. Appellees contend that it would not be fair to others to permit appellant to build a dike on his lands and hold the water back and permit it to soak through onto theirs. The lands of appellant and others in the district are described in the record. The nature of the ditches and the outlet, the effect of establishing a district and of including appellant's lands, are described.

It will serve no useful purpose to set out the testimony,

and it is enough to say that, under the record, the situation was such that it was a question for the engineer and the board of supervisors, not only as to the establishing of the district, but the inclusion therein of appellant's land, and, under the record, it could properly have been found that appellant's land was benefited by the improvement.

3.   All constitutional questions argued have, we think, been determined before, and we ought not to take the time or space to reargue or restate the holdings.

4.   It is next argued by appellant that

2. DRAINS : establishment: notice: jurisdiction.   the board of supervisors lost jurisdiction by reason of adjournments from time to time, and that changes were made in the plan or extent of the district without notice to interested parties. He cites a part of Section 1989-a3, Code Supplement, 1913, as follows:

"And by fixing such new day for hearing and by adjourning said proceedings to said time, the board of supervisors shall not be held to have lost jurisdiction of the subject matter of said proceeding, nor of any parties so previously served with notice."

The argument is, in substance, that, the board having called a hearing and adjourned the same without date, and thereafter changed the plans of the proposed district affecting those to be included, they should show a new notice to interested parties, and that a failure to do so is a loss of jurisdiction in the board to proceed further.   We do not understand the record as appellant claims it to be.   There were some changes in the district after it was first established; but, when it was finally established, a previous notice had been given to the appellant, and, as before stated, appellant had set out additional objections.   From an examination of the record, we think appellees have fairly stated the record bearing on this question, and perhaps we are justified in setting out the record somewhat

in detail, as bearing upon this question. This we will do as briefly as may be.

The petition for the district was filed July 31, 1909. August 2, 1909, the board appointed an engineer to examine the proposed district and make report. On September 6th following, the engineer filed his report recommending the establishment of the drainage district and including the lands of appellant within the district. This was duly approved by the board the next day, and notice ordered. Notice was given, and the time set for hearing under the notice was November 1, 1909. Before the hearing, various objections were filed as to the location of the drains, and also claims for damages, among which was that of a railroad company for $100,000, and one of a town lot company for a like amount. Appellant's objections were filed October 16th. These objections were, in substance, that appellant could drain and dispose of the water from his lands in another direction, discharging it directly into the general course of natural drainage by another way than that proposed in District 53, and at the same time he notified the board that, if the existing conditions on his premises were such that they constituted an actual nuisance or menace to the public health, he would, upon the service of notice, at once abate the same. The Drainage Record shows that, on November 1, 1909, after listening to the various statements of the persons interested in the district, it was the opinion of the board that a further examination of the proposed improvement should be made and further report made to the board, but it was found that the petition was sufficient in substance and form, and that the drainage district would be a public health convenience and welfare and a public utility, and, claims for damage having been filed, the board desired a further report on said matter. A new engineer was appointed, who was directed to make further survey and inspection of the district and make report on or before De-

cember 6, 1909; and the record provided that all matters in connection with the appointment of appraisers and other matters in connection with the district were continued until that time. The Drainage Record shows that, on December 6, 1909, the engineer appointed to make further survey and report having failed to report, it was continued until he filed report. January 30, 1910, the engineer so appointed having failed to report and having resigned, another person was appointed to make further report, and, on July 11, 1910, this engineer filed his supplemental report, making a change in some of the lines, but, so far as we can see, not affecting appellant's land. Some of the lands were included, and the cost of construction was increased on account of larger drain. September 19, 1910, the engineer made another supplemental report, in which he affirmed his former report, reported the claims of $200,000 by the railway and town lot company to be without foundation; and the board on that day made an order accepting the original report and ordering the appointment of appraisers to appraise the damage, and continued further hearing until October 3, 1910. Later, a commission was issued to appraisers, and they filed their report fixing the amount of damages by reason of the construction. Later, the board met to further consider the matter, allowed the damages as reported by the appraisers, and made an order locating the drainage district and establishing the same according to the plat and report of the engineer. We shall not set this out, but it seems to contain all jurisdictional matters required. The railway and town lot company and this appellant appealed from the ruling of the district court establishing the district, and the railway and town lot company and another party appealed from allowance of damages. Without any action on the part of the board, but on the direction of the county attorney, as shown therein, the engineer made a further supplemental report, on Jan-

nary 3, 1911, stating that he had worked out the details of another outlet to this drainage district, and that the cost was $2,513.10 greater than in his original report. On the 4th of the same month, the board, by resolution duly entered of record, found that other lands should have been included in the district, and ordered the engineer to plat the same and make report according to Chapter 118, Laws of the Thirty-third General Assembly; and on February 6, 1911, the engineer, pursuant to the order of the board, reported that he had examined the district, and recommended that the lands contained in the district should be included, returning a plat and profile thereof, and further reported that, on account of the change, it would be necessary to change the outlet from that originally reported by him, and he recommended certain changes in the size of the tile. After all these proceedings, on April 4, 1911, the board adopted and ratified the plat submitted as additional territory to said district, and ordered the auditor to serve notice upon the landowners and necessary parties within said additional territory, as provided by law. Pursuant to this order, and on April 26, 1911, the auditor did cause notice to be given to additional landowners, and, in addition thereto, all landowners in the district, and included the appellant by name in said notice. This notice was duly published, and thereafter, claims for damages were filed by new owners served with notice, and objections by different persons; and thereafter, and on May 31, 1911, the appellant herein appeared and filed objections in considerable detail, and about forty-five in number. Some of these objections are that the public benefit, utility, health, welfare or convenience would not be promoted; that the appointment of an engineer and all subsequent proceedings are illegal and without jurisdiction because a sufficient petition was not filed; that the reports do not comply with the law; that the statute under which this proceeding is being carried on violates numerous pro-

visions of the Constitution of Iowa and the Constitution of the United States; that the district was not a public necessity, and would not justify the expenditure of the amount of money necessary.

"42. That the statute is not law; it is where law leaves off and where tyranny begins. That it is not law in that it does not conform to reason; that the statute is too broad to be constitutional; that it does not impose limitations sufficient to constitute a valid act.

"43. That the statute gives the official or board of supervisors too much power in industrial affairs. That it is as important that the state and industry be kept separate as it is that the state and church be kept separate.

"44. That actual necessity knows no law and may justify anything is no reason why something that conduces toward a good thing should be seized on to override constitutional rights.

"45. In free governments, men hold their land under constitutional safeguards like life and liberty; in absolute forms, by precarious and uncertain tenures," and so on.

On June 6th following, the board met and ordered the appointment of appraisers to act upon the new damage claims filed by the owners of the additional lands, and on June 15th, the damage claims filed as additional having been disposed of and withdrawn, the record shows that the board proceeded to hear all parties objecting to the establishment of the district, and, after said objections were given consideration, further consideration was continued until June 19, 1911, on which date appellant filed a further paper with the auditor and board, demanding a further hearing on that day; and on that date, the board also made the order including the additional lands in the district, according to the report of the engineer, and adding them to the district. June 29th, the engineer made a further supplemental

report in reference to the change in the outlet, and on the same day the board passed a resolution making final addition of said lands to the district and reaffirming their former action in the establishment of the district.

The proceedings seem to have been prolonged, and may have been somewhat irregular. No cases are cited by appellee, but we find that the authorities provide that appellant has the burden of showing that the district was improperly established, and, in order to justify interference by the court, must show clearly either that the board acted without jurisdiction or that they have abused the powers conferred upon them. *Mittman v. Farmer*, 162 Iowa 364; *Mapel v. Board of Supervisors*, 179 Iowa 981.

*Gray v. Anderson*, 140 Iowa 359, may perhaps have some bearing at this point. It is there held that, where one who has had proper notice of a proceeding for the assessment of costs and damages is bound to take notice of the subsequent proceedings in that respect contemplated by the statute, the adjournment of the board to a subsequent date for further consideration does not deprive it of jurisdiction.

In the instant case, final notice was given, and appellant appeared and filed his objections, and was given an opportunity to be heard, and thereafter the district was finally established. Under such circumstances, we think he may not now complain.

It should have been said that, as the district was first proposed, the outlet to the district was to be in the gravel pit belonging to the railroad and the town lot company, which claimed that they took their ice supply from the gravel pit and that the drainage would injure their ice supply. The engineer at first thought this claim of these companies without merit, but afterwards it was thought there was some merit in the claim, and it appeared that, by including the additional territory, an outlet could be secured which would do away with these claims.

The questions we have discussed are decisive of the case, and our conclusion is that, upon the whole record, appellant has no just cause of complaint, and the judgment of the district court is therefore—*Affirmed.*

GAYNOR, C. J., LADD, WEAVER, EVANS and STEVENS, JJ., concur.

SALINGER, J., takes no part.