IRMA H. HARRIMAN et al., Appellants, v. BOARD OF SUPER-
VISORS et al., Appellees.

**DRAINS:** Assessment of Benefits—Prior Drainage System—Adapta-
bility for Lateral Tiling. In determining the assessment of bene-
fits for a drainage improvement, due consideration should be
given (a) to the system of drainage already provided by the
landowner, (b) the relative amount of land actually drained by
the new improvement, and (c) the extent the improvement affords
outlet for lateral drainage. *Held*, assessment should be reduced
one-third.

*Appeal from Franklin District Court.*—HON. R. M. WRIGHT,
Judge.

THURSDAY, MARCH 11, 1915.

APPEAL from a decree confirming a special assessment.—
*Reversed.*

*John M. Hemingway,* for appellants.

*B. H. Mallory,* for appellees.

LADD, J.—Drainage District No. 18 of Franklin County
has been established and the improvement completed. The
cost was estimated at $14,800 and of this $1,195.28 was as-
sessed against the two townships whose highways were drained
or afforded outlets for drainage. The remainder was dis-
tributed among seventy-six forties. Appellants own the
S. E. ¼ of Sec. 20, the several forties being assessed as
follows:

N. E. ¼ S. E. ¼................$ 752.00
N. W. ¼ S. E. ¼................  397.75
S. W. ¼ S. E. ¼................   64.50
S. E. ¼ S. E. ¼................  129.00

The appeal is from an order of the district court approving these assessments for that, as is contended, the apportionment was not according to the benefits received and exceeded such benefits. In order to pass on this question, it will be necessary to describe the improvement somewhat in detail. To better understand the situation, a map of the system is attached.

1. DRAINS: assessment of benefits: prior drainage system: adaptability for lateral tiling.

The outlet is a creek and into it, somewhat north and west of the center of Sec. 21, empties the open ditch which extends in a southwesterly direction to the highway between

that section and the S. E. ¼ of Sec. 20, a distance of 2,500 feet. On the east line of the highway is the bulkhead at the end of the 24-inch tile. From this point, the tile drain extends northwesterly 1,800 feet through the land of appellants, which will be referred to as the Harriman land, to the quarter line and then a little north of this line westerly through the N. E. ¼ of Sec. 20, belonging to Geo. Christiansen, to the west line, or something over 1,100 feet. From this line, it extends into the land of J. S. Raymond, the N. W. ¼ of Sec. 20, nearly 900 feet, or 6,300 from the outlet to the junction with the lateral. This lateral extends to the southwest 8,127 feet and is of 16-inch tile. The main is of 20-inch tile from this junction to the northwest, a little over 10,000 feet. The grade of the main is .1 foot to the 100 feet for 6,000 feet from the outlet and .38 foot to 100 feet the remaining distance. The grade of the lateral is .1 foot for 100 feet for 4,000 feet and the rest of the way is .4 foot for 100 feet. Prior to the establishment of the district, what is known as a bull ditch had been excavated by F. A. Harriman, since deceased, and Raymond from the creek into Raymond's land along the course of the tile drain and they had paid the owner of the W. ½ of Sec. 21 for damages consequent on excavating the same through his land. This was deepened from nothing to 2.4 feet from the bulkhead to the outlet, though the course was changed near the creek. From the bulkhead up, the tile was laid below the bottom of the ditch and this only filled up to its original depth and left open above to carry off the water. The cut at the bulkhead was 3.6 feet and 6.29 feet where the tile passed into the Christiansen land and was much greater beyond.

The ditch varied in width from 6½ to 10½ feet at the top and from 3 to 6 feet at the bottom and was from 2 feet 2 inches to 4 feet deep. As said, this was not filled but, as shown by the evidence, will gradually fill up, especially when the several farms are tiled into the main and lateral and cultivated. Whether the depression will be required to carry

off the surface water in event of unusual rainfalls is in dis-, pute. That water in large quantities flowed down the ditch in the spring before the tiling had been completed does not necessarily prove that the open ditch will be necessary after the system is in operation and landowners have drained their land into it. The burden of this risk, however, is cast on the Harriman land. The ditch may have carried off the surface water before the tile was laid but not as quickly and completely as the tile drain. Moreover, the drain, when the land above is tiled, will extract the water from the soil down to the depth of the tile and obviate the seepage from such land. Tiling into the ditch as had been done on the west part of the Harriman land, though probably somewhat beneficial to the land, was not completely effectual in rendering it suitable for cultivation, owing to this seepage. True, practically the main advantage of the tile drain to the Harriman land was in carrying off the surface water and seepage from above; but until relieved of these, it could not be successfully drained. Considerable advantage also will be derived from the main tile in draining, for it will seldom be full and will serve about the same purpose as a small tile laid at the same depth as its top is from the surface. As laterals should enter at or near the top, it is apparent from the depth of the cut through the Harriman land that difficulty will be experienced in getting sufficient fall by connecting any of these with the main. The only safe method, according to the evidence, will be to extend the tile draining the north eighty south of the main to the bulkhead, allowing the water to flow directly into the open ditch. The south eighty acres must be drained into the open ditch if at all. On the other hand, the cut or depth of tile in the other tracts is such that all of these can be drained through laterals into the tile drains of the system, thereby avoiding the expense appellants must incur in reaching an outlet. Moreover, those on which the assessments are about the same or higher derived a far greater benefit from the drainage afforded by the system. Thus in the N.

W. ¼ of Sec. 20, there were 5,650 feet of tile and the assessments,

| | |
|---|---|
| N. E. ¼ .......................... | $ 365.50 |
| N. W. ¼ N. W. ¼ ............... | 666.50 |
| S. W. ¼ N. W. ¼ ............... | 774.00 |
| S. E. ¼ N. W. ¼ ............... | 1,075.00 |

The NE. ¼ SE. ¼ Sec. 19 had 1,400 feet of tile in it and was assessed $978.25. These sufficiently illustrate the point. And the tile in both these tracts was laid at a depth so as to be available as outlets for laterals. What then are the benefits of the system to the Harriman land? Of course, it had the advantage of the ditch before the tile was laid and that carried off the surface water and (1) the only benefit of the tile drain was in carrying it off quicker; (2) it took care of the seepage; (3) the ditch from the bulkhead was deepened and the water from the tile drain likely will keep it clean, making it somewhat better as an outlet than the original ditch, though much evidence is to the contrary, and the burden of keeping it open is on the district; (4) the main tile will drain a small area on each side of it through this land and on the south side of it after it enters Christiansen's land.

A possible disadvantage is suggested in that the high water mark of the creek reaches the Harriman land and it is said that when this occurs, water will be held back in the tile, seepage from which will reach the soil. This might happen for a short time; but if so the soil would likely be so saturated with water as not to be injuriously affected thereby. The only possible benefit the south forties could derive from the improvement is the care taken of the seepage and the deepening of the ditch, and keeping it clear. Even this was not essential to drainage into it, for it was already deep enough to carry off the water which might be drained from these forties. The cost of deepening was $250, but the owner of the land claimed damages for the additional servitude,

and these were assessed at $500, with expenses for ascertaining, amounting to $175. Manifestly, no part of this expense, aside from the deepening, should have been assessed against these tracts, for the right to drain them through Sec. 21 had previously been acquired by appellants' decedent. But these were assessed at $193 or nearly as much as deepening the ditch . cost. The topography was such that neither would suffer much from seepage and the assessment was clearly out of proportion to the benefits. The same is true of the north forties. The appraisers in estimating benefits divided the tracts into swamp, wet, low and high and then made corrections because of distance from the drain and computed accordingly. They should also have taken into consideration the relative amount actually drained by the improvement and to what extent it afforded an outlet for laterals. As seen, it is not available for that purpose for appellants' land, which must be drained into the open ditch, the right to use which appellants already enjoyed. These matters seem to have been overlooked or else accorded too little significance. In what amounts the assessments should be reduced it is difficult to determine with any degree of accuracy. From a comparison with those levied against other lands and the topography of the several tracts in so far as appears from the tables before us, we are satisfied that the assessments against appellants' several forties should be reduced at least one-third and such will be the order of this court.—*Reversed.*

DEEMER, C. J., GAYNOR and PRESTON, JJ., concur.